# O'NEAL ET AL. *vs.* ROBINSON.

[BILL IN EQUITY TO FORECLOSE MORTGAGE.]

1. *Foot-note, omission of, to bill in chancery; effect of.*—The omission to make a note in writing at the foot of a bill in chancery, as directed by the tenth rule of chancery practice, requiring the defendant to answer certain statements and interrogatories thereof, is not a mere formal defect, which is waived if not objected to in the lower court. The note in writing at the foot of the bill is necessary to give it completeness, and to make the decree *pro confesso* equal to one "legally taken" in its force as evidence.

2. *Same.*—A decree *pro confesso* entered on the failure of a defendant to answer such a bill, does not aid the proof ; a final decree against such defendant, must be sustained by sufficient proof outside of the admissions which, in a proper bill, would be implied from the decree *pro confesso.*

3. *Husband, death of; effect of, on defective conveyance of wife's property.* The death of the husband, after an abortive attempt by the wife to convey her separate estate by way of mortgage, in order to secure her own debt, does not operate as a confirmation or ratification of her abortive act. By the death of the husband, his limited power over her separate estate is cut off.

4. *Section 1552 of Revised Code controls section 2373.*—Section 1552 of the Revised Code is not merely a registration act, but it controls section 2373 of the same Code ; therefore, a conveyance of the wife's separate statutory estate, to which she writes her own signature, is sufficient without attesting witnesses, if acknowledged in a proper manner before a proper officer.

5. *Section 1536 of Revised Code does not modify section 1 of same Code.*—Section 1536 of the Revised Code does not repeal or modify section 1 of the same code, upon the requirements necessary to make a "signature" or "subscription," when the party making it cannot write.

6. *Signature of party unable to write ; what must be done to make legal.* When a party cannot write his own name, he must make his " mark ;" his name must be written near it, and "witnessed by a person who writes his own name as a witness, in order to make the signature complete and legal."—Rev. Code, § 1535.

7. *Same; when conveyance of land by person unable to write is legally made.* A conveyance of lands, so made and attested by a second witness, or acknowledged, is a legal execution of the conveyance ; but when executed in any other manner, is not legally "made."

APPEAL from Chancery Court of Montgomery.
Heard before Hon. N. W. COOKE.

The facts are sufficiently stated in the opinion. '

JEFFERSON FALKNER, for appellant.

CUNNINGHAM & GRAVES, and WALKER, MURPHY & WINTER, contra.

[None of the briefs or arguments accompanying petitions for rehearing in this case came into the Reporter's hands.]

PETERS, J.—John O'Neal, on the 9th day of January, 1861, by his deed of that date, executed in the county of Montgomery, in this State, conveyed to his wife, Mary O'Neal, and Catherine Calford, a certain lot or parcel of land in the town of Montgomery, in said State, for their sole and separate use forever. Afterwards, on the 10th day of July, 1866, said Mary O'Neal jointly with her husband, said John O'Neal, signed her name, by her mark, to a certain instrument in writing, purporting to be a mortgage, which is made a part of complainants' bill of complaint, and set forth as an exhibit to the same. This instrument is also signed by John O'Neal, in his own hand writing. There is no attesting witness or witnesses to these signatures thus made. But the execution of the instrument is acknowledged in due form before the judge of probate of said county of Montgomery, both by the said John and the said Mary O'Neal. In the bill of complaint it is called a "mortgage;" and it purports to convey to Patrick Robinson the tract of land aforesaid by way of mortgage, in order to secure a debt of six hundred and twenty-five dollars, which said Mary O'Neal owed to him, and which was evidenced by a note for said amount falling due the first day of January, 1867, and is payable to said Patrick Robinson. Said note bears date 10th day of July, 1866, and is signed by said Mary, by her mark, and attested by two witnesses. This instrument, called a mortgage, gives to the said Robinson power to take possession of the land mentioned therein, "if default be made in the payment of said note at the time the same may fall due," and "sell the same to the highest bidder, at public auction, for cash, *at the court house door* of the county of Montgomery and

State aforesaid, giving at least thirty days' notice of said sale, by advertisement in some paper published in the town of Montgomery and county of Montgomery," but " all formality in the advertisement " is waived.

On the 8th day of August, 1867, said Patrick Robinson, as complainant, filed his bill in chancery against said Mary O'Neal and said Catharine Calford, as defendants, in the chancery court of Montgomery county, in this State. At the filing of the bill, said John O'Neal, the husband of said Mary O'Neal, was dead. The bill alleges the conveyance by John O'Neal to Mary O'Neal, his wife, and Miss Calford, of the lands mentioned in said deed of the 9th day of January, 1861, which is made a part of the bill as an exhibit. It also alleges the indebtedness of Mrs. O'Neal to said Robinson, as shown by her note executed on the 10th day of July, 1866, for six hundred and twenty-five dollars, and a default in its payment; also, the making of the instrument in writing, which bears date the first day of July, 1866, which is called a " mortgage " in said bill. This instrument in writing is also made a part of the bill by exhibit. The parties defendant were said Mary O'Neal and said Catharine Calford, and they were required " to answer as by law in such cases provided."

There was no note by the complainant at the bottom of the bill, in writing, as to the particular statements or interrogatories, by number, which complainant desired each defendant to answer, as required by the tenth rule of chancery practice, nor were there any interrogatories contained in the interrogating part of said bill, as required by the eleventh rule of chancery practice, prescribed by the Supreme Court of this State. The bill prayed an account and a sale of the premises mentioned in said instrument in writing called a mortgage, in said bill, and for general relief.

The defendants were duly served with process and brought into court. Mrs. O'Neal failed to answer, and judgment *pro confesso* was taken against her. Miss Calford answered by her guardian *ad litem* properly appointed. She admits the conveyance of the lands mentioned in said John O'Neal's deed to her mother, Mrs. O'Neal, and her-

O'Neal et al. v. Robinson.

self, and demands strict proof of all the allegations of the bill not admitted by her.

The proof taken by complainant shows that said John O'Neal, the husband of said Mary O'Neal, was living at the execution of said instrument called a mortgage in the bill, and that it was executed and delivered as it appears in the exhibit to said bill; but it was not attested by any witnesses at all. This is the instrument dated the 10th day of July, 1866, purporting to be a mortgage made by Mrs. O'Neal, conveying the lot of land therein named to said Patrick Robinson, to secure a debt of six hundred and twenty-five dollars owing to him from Mrs. O'Neal, and signed by her by her mark, and by her said husband. This instrument is acknowledged before the judge of probate of said county of Montgomery by said Mary and said John O'Neal. It was also proven by complainant that the said debt of six hundred and twenty-five dollars was Mrs. O'Neal's own debt, and that said lands named in said instrument of the 10th of July, 1866, could not be equitably divided without a sale thereof.

Upon this state of the pleadings and proofs, the learned chancellor who presided at the hearing of this case in the court below decreed an account between complainant and Mrs. O'Neal, and a foreclosure of "·the mortgage as to the one undivided half interest of Mary O'Neal in and to the property described therein."

Under this decree, the register sold the property named, at the "artesian basin" in the city of Montgomery, on the first Monday in November, 1867, and this sale was so reported to the court by the register, and confirmed. No objection seems to have been filed or made to the confirmation of the report.

The defendant, Mrs. O'Neal, brings the case to this court by appeal, and assigns as error, that the court erred in not dismissing the bill for want of equity and for want of a note at the foot of the bill, and the decree in the case below. These are the only errors necessary to be noticed.

Under the law bearing on the facts of this case, the decree of the court below ought not to be permitted to stand. There was no foot note to the bill, as is required by the

rule of practice prescribed by this court. Its omission can not be construed to mean less than a waiver on the part of the complainant of any answers at all by the defendants. The rule must have some effect, and this is about the least that can be.given to it. Its omission, then, can not be regarded as a mere formal defect, which is waived if not taken advantage of by objection in the court below. It seems that its addition is necessary to complete the bill. The rule requires that " the complainant shall make a note in writing at the bottom of the bill, as to the particular statements or interrogatories, by number, which he desires the defendant to answer ; and the answer need not go beyond such requisition, except for such defendant's own protection." Chanc. Rule 10, Rev. Code, p. 824, § 660. Now, this language is peremptory, and it must be obeyed, or the cause is not in a condition legally to pass beyond it. Then, a bill which does not contain this " note in writing at the bottom of the bill," is not in condition for a decree *pro confesso* against a defendant who has failed to answer, so as to give such decree the force of a ".decree *pro confesso* legally taken." Under such circumstances, the failure to answer and decree *pro confesso* do not aid the proofs. These must be sufficient to sustain the chancellor's decree without any reference to the presumed confessions of the defendant implied from the decree *pro confesso*. The decree *pro confesso* on such a bill does not aid the proofs. The case must be fully made out without it.—Rev. Code, § 821, Rule 10 ; *ib.* § 3391.

Here the testimony of the witnesses, without the confessions implied from the decree *pro confesso* against Mrs. O'Neal, does not show a mortgage properly executed so as to pass the title of a married woman to her separate estate during the life of her husband. There are no attesting witnesses to the execution of the instrument relied on as a mortgage. These are required to complete its execution, Code, § 1 ; Rev. Code, § 1. On the day of the signing of the instrument called " a mortgage " in the bill, and so treated in the decree of the chancellor in the court below, Mrs. O'Neal was a married woman with a living husband, and the conveyance was an attempt to charge her separate

estate. This could only be done in the manner prescribed by the statue,—that is, it must be " conveyed " by the husband and wife " jointly, by instrument in writing, attested by two witnesses."—Rev. Code, §§ 2371, 2372, 2373., Or, when she signs by her mark, attested by at least one witness to her signature.—Code, § 1. In construing this statute, in the case of *Warfield v. Ravesies and Wife*, this court, upon a critical review of all the cases, have declared that, " we hold, that a married woman having an estate secured to her under the act of 1850, or under the Code, so long as her husband continues her trustee, cannot convey or charge her estate, unless she conform to the requirements of the statute."—38 Ala. 524 ; 37 Ala. 375. We approve this construction. The formalities required by the Code must be all complied with, else the conveyance is without legal validity ; it is inchoate and imperfect, and no right can be founded on it. Such is the instrument in this case ; it is an abortive attempt to execute a mortgage. And neither a court of chancery nor this court have any power to give it validity. It cannot be used in any court of this State as evidence of a mortgage. To permit this would go to defeat the statute, and render one of its most important restrictions of no avail. The chancellor, in giving it the force of a mortgage in the court below, went beyond any legal effect which the law allows to be attributed to it. And in this particular the decree below is not sustained by sufficient evidence. This is apparent from the face of the record. Rev. Code, §§ 1, 3473, 1552.

Again, Miss Calford, who is a half-orphaned female, and a minor under fourteen years of age, has a deep interest in this suit. She is the co-tenant, with her mother, of the land in controversy. She is also a co-defendant to the bill. And there is no proof against her, except the admissions of her mother, which are insufficient to establish the mortgage.—Gres. Eq. Ev. 29, 50, 51. It is a question of very grave concern with her as to the person who may become co-tenant with herself in the possession of the land in litigation, after her mother may be ejected. Such co-tenant may be such as to render the possession untenable and worthless to her, and, under some circumstances, it may

O'Neal et al. v. Robinson.

amount to a moral and social dispossession. Therefore, it is but just to her that the proofs against her mother should be full and complete. The mortgage being defectively executed, she could have demurred to the bill, or moved to dismiss for want of equity. And her guardian *ad litem* ought to have been vigilant to interpose and bring to the notice of the court every objection, both to the substance of the bill and the sufficiency of the proofs, which could have availed for his ward's defense. The pretended mortgage was invalid, and the bill was clearly without equity if there was no mortgage; and there was none, unless the death of John O'Neal, the husband of Mrs. O'Neal, had the effect to give validity to that which was attempted to be executed in his life time. But this can not be so, because the husband's connection with his wife's estate was cut off with his life. He could only ratify her acts, and give effect to them in the manner required by the statute, which gave him his connection with her estate and his very limited power over it. The ratification must come from her to be effectual. The death of her husband restores her to full power over her estate as a *feme sole*, but it does not make good her illegal efforts to convey it before his death. If she has ratified and confirmed the imperfectly executed mortgage which was made in her husband's life time, since his death, it must be alleged in the bill and supported by the proofs, to give it effect.—Rev. Code, §§ 1, 665, 2373; 2 Kent, 237, marg.

The decree of the court below is, therefore, reversed and the cause is remanded with leave to the complainant to amend his bill in the court below, as he may be advised.

The said Patrick Robinson, appellee, will pay the costs in this court, and the costs of the appeal in the court below.

NOTE BY REPORTER.—The foregoing opinion was delivered at the January term, 1870, and at a subsequent day of the term, appellee applied for a rehearing. The application was held under advisement until the July term, 1870, when the following response was delivered by—

PETERS, J.—This cause is brought before the court a

second time on an application for a rehearing. The question thus raised is an important one, in whatever aspect it may be considered.

The property in controversy in this case is clearly the separate estate of a married woman held under the statute law of this State governing such property. It is a gift by the husband to the wife by deed executed on the 9th day of January, 1861, and to Catharine Calford, for their "sole and separate use forever." This makes the property conveyed a separate estate under the statute.—Revised Code, § 2371; *Pope v. Bibb*, January term, 1869. The appellee so treats this estate in his bill.—*Goree v. Walthall, Adm'r*, January term, 1870.

The whole law governing the statutory " separate estate of the wife " is contained in a single article of the Revised Code. It is complete as it is found there. This requires that this separate estate of the wife shall be conveyed by the husband and the wife jointly, by instrument in writing, *attested by two witnesses.*—Rev. Code, § 2373. The construction uniformly put on this statute is, that this requirement can not be dispensed with ; that is, that this is the only mode of conveying such estates. This is tantamount to the declaration that the deed would be ineffective and void without these prerequisites ; in fact, that it was no deed at all, until these requirements were complied with.— *Warfield v. Ravesies and Wife*, 3 ß Ala. 518, *and cases there cited.*

Doubtless these precautions were imposed in order to make the security of the wife's statutory separate estate as great as possible. The wife being, in a greater or less degree, in the power of the husband—*in potestate viri*—both by the precepts of the church and the maxims of the law, it was intended to furnish her with the highest possible security against fraud and deception, and against that unfriendly domination of the husband over her and her estate which experience has long taught legislators and statesmen has oftenest proved detrimental to her estate, in spite of all her feeble resistance, as well as all her prayers and tears. And still, in some judicial minds who worship at the shrine of common law, she is regarded as the husband's servant, and may be forced to do his bidding as a child or servant,

by moderate correction, and without the violation of "the old law." And there are also still husbands who, clinging to the theories and privileges of the old law, think it not wrong to force or to wheedle a timid and modest woman into a complieance with their wishes. These are influences exceedingly difficult to check, and to control as the highest justice requires. They ever stand battling and objecting in the way of her rights, because hitherto there has been only "a doubt to support them."—1 Bla. Com. 445, marg.; Stra. 1207.

But at the present day our fundamental law has changed the institutions of this country from "the old law" to a new basis more in conformity with humanity and a purer sense of right. According to our constitution, "All men are created equal;" and the word "man" includes persons of both sexes. Then, the wife is the peer and equal of the husband in all her great rights of life, liberty, and the pursuit of happiness.—Const. Ala. 1867, Art. 1, § 1; Rev. Code, § 1; Const. U. S. XIV Amend. § 1. And to protect her in these important rights, the statue under discussion was enacted. The mode of conveyance under this act is a part of its protective power. It leaves the wife the absolute owner of all the property that belongs to her, and prescribes certain formalities which are necessary to be used by her in parting with her title when she and her husband choose to pursue such a course. This provision excludes the use of any other way. It is the only way; it is without *proviso* and without qualification, in the article of the Code which comprehends the whole law on the subject of the statutory separate property of the wife. It is full and complete in itself. In such a case, it is the only rule. Smith Com. on Stat. p. 692, § 547.

The Code excludes all laws not excepted out of it, of a general character, which are not found in that compilation. It is not all one law. Its connection and separation into parts, titles, chapters, articles, and sections, is one of the instrumentalities by which it is to be construed.—Revised Code, § 10. All the sections upon the same subject matter are to be taken as one law, and construed together. Their location points out their connection, and the subject mat-

ter on which they form the rule.—Smith's Com. on Stat. p. 751, § 637, *et seq.*

The statutory separate estate of the wife is one thing, and conveyances by married women in general is another. Similarity is not likeness. "Statutes which are *in pari materia,* are those which relate to the same person or thing, or to the same class of persons or things. The word *par* must not, however, be confounded with the word *similes.*" It has been justly said that " an argument drawn from a mere similitude of words which are used in relation to a subject entirely different, would be a sophism too palpable to need serious reply."—Smith's Com. p. 751, § 636 ; Taney, C. J., in *The Passenger Cases*, 7 Howard, 122, 494. Therefore, it is illogical to make one section of the Code operate as a *proviso* on another section, upon quite a different subject matter. Sections 1536, 1551 and 1552 of the Revised Code are not parts of the law for the conveyance of the statutory separate estate of the wife, under the law governing such estates. These are general provisions, and refer specially to other conveyances, and not to the peculiar subject of the statutory separate estates of married women, which is, under its own head, sufficiently well regulated by law. These sections, then, were not intended to repeal section 2373, or to modify it, and should not be so construed.—*Mobile & Ohio Railroad Co. v. The State*, 29 Ala. 573. Section 1536 shows that it refers to the preceding section, and to acknowledgments " hereinafter provided for ;" that is, to sections 1535 and 1551 and 1552. Neither of these refers to section 2373. Section 1551 only regulates a certain class of things that may be owned by a wife, and section 1552 is a part of the same law, and they are not extended by position, or purpose, or policy, to the special rule contained in section 2373. This rule is an important provision for the protection of the wife's statutory separate estate, which rests on the statute for its existence. There can be, and are, other separate estates belonging to married women, which do not need such protection, because their protection is found in the law by which they exist. It is to the conveyance of such estates as these latter that sections 1535, 1536, 1551

and 1552 refer, and not to the former, which can alone be conveyed under section 2373.—38 Ala. 518.

A conveyance, then, under the act for the regulation of the statutory separate estates of wives, is not so far completed as to allow of its acknowledgment and registration, until it is executed and attested as that law prescribes shall be done. There is a wide protective force in the presence of two attesting witnesses that is altogether taken away by a mere formal acknowledgment, which may be wholly the effect of a constraint against which the wife has no protection. This is the rule as to wills, and they would be insufficient, except in certain cases, without two attesting witnesses.—Revised Code, § 1930 ; *Riley v. Riley*, 36 Ala. 496. A married woman's estate is the stronger for a like support.

In this case, there was evidently a shyness in coming up to this test. All the instruments showing the contracts of the parties are carefully attested by two witnesses, until the proceeding comes to the conveyance of the wife's homestead ; there this precaution is abandoned, and a bare acknowledgment is resorted to, in its stead. Just where the wife needed the presence of two attesting witnesses, one of whom, at least, might have been selected amongst her own intelligent friends, who could have aided her with proper advice, the two witnesses are altogether left out. I do not say this to cast any suspicion upon the honesty of this transaction. But the law is intended to provide for the protection of the wife. This would not be needed, unless she was presumed to be sometimes weak, ignorant, or overpowered. And where there is weakness, ignorance, or fearfulness, there will be dupes. And where there are dupes, there will always be found knaves to deceive and cheat them. It is in part against such dangers that this law is intended to provide. And to overturn section 2373 of this law, by construction, would in effect be to repeal it. And thus would be lost one of its highest protective features. I cannot suppose that the legislature intended any such thing. This statute has always received this construction of this important requirement of its provisions.

To abandon it now is manifestly improper.—*Warfield v. Ravesies and Wife*, 38 Ala. 518; *Pope v. Bibb, supra.*

In reply to this, it may be said that the original acts which have been digested into the Revised Code, imply a different purpose. Upon this subject we can not look beyond the Revised Code for the law, except as to laws which have been subsequently enacted by the rightful authority of the rightful State. A State law is "only a rule created by the sovereign power of a State" of the Union, "acting in its legislative capacity as a State" of the Union, under competent authority of the rightful and lawful government of the State.—*Cooley v. Wardens of Port of Phila.* 12 How. 299, 318, Curtis, J., *arguendo;* Jameson Conv. p. 347, § 370, cl. 2; Smith Com. on Stat. p. 236, *et seq.* All laws of this character found in the compilation called "the Revised Code of Alabama," have been continued in force as they are there found, as "laws of the Revised Code."—Pamph. Acts 1868, p. 7, *An Act to continue in force certain laws.* Beyond this, we are not authorized to look for laws, save in excepted cases, except to the "laws and parts of laws" there found.—Rev. Code, § 10; Const. Ala. 1819, Art. VI, 20; Code, p. 43.

Governed by these views, the rehearing is denied. The appellee will pay the costs of the application for rehearing.

[NOTE BY REPORTER.—After the delivery of the foregoing response to appellee's petition for a rehearing, he again petitioned the court for a rehearing. At the present term, the petition was responded to by—]

PETERS, J.—The majority of the court hold that section 1552 of the Revised Code is not a mere registration act, but that it controls section 2373 of the same Code. These sections are in the following language:

"§ 1552. Conveyances of a wife's property, made in writing by the husband and wife jointly, and acknowledged before some officer authorized to take acknowledgments of conveyances, are as valid and adequate to pass the wife's estate as if the same were attested by two witnesses."

"§ 2373. The property of the wife, or any part thereof,
35

may be sold by the husband and wife, and conveyed by them jointly, by instrument of writing, attested by two witnesses."

It follows, from this construction of these statutes, that where the wife *makes* her own signature to the conveyance, there is no necessity of attesting witnesses, if she acknowledges the execution of the instrument, in a proper manner, before a proper officer.—Rev. Code, §§ 1542, 1548, 1551. The acknowledgment is in lieu of the two attesting witnesses, when the wife is able to write her own name and make her own signature to the instrument, and does so accordingly.

But when she is not so able to write her own name and make her own signature to the conveyance, and only her name is written to the instrument with a mark, and she is a person who can not write, then her signature is not complete and perfected unless her "mark" is made by her, and "her name is written near it, and attested by a person who writes his own name as a witness."—Rev. Code, § 1. Before the signature is completed in this way, the "subscription" of her name is inchoate. The conveyance is not legally made. And an acknowledgment does not perfect it. When the person can not write, there is no legal execution of the instrument until the "mark" is made, the name of the person making the subscription is written near it, and "witnessed by a person who writes his own name as a witness." This is the precise language of the statute above quoted.—Rev. Code, § 1, *supra.* If less force than this is given to it, it means nothing. This section of the Code is not contravened by section 1535, which is in these words, to-wit:

"§ 1535. Conveyances for the alienation of lands must be written or printed on parchment or paper, and must be signed at their foot by the contracting party, or his agent having written authority; or if he is unable to sign his name, then his name must be written for him, with the words "his mark" written against the same, or over it; the execution of such conveyance must be attested by one, or where the party can not write, by two witnesses, who

O'Neal et al. v. Robinson.

are able to write, and who must write their names as witnesses."

"§ 1536. The acknowledgment hereinafter provided for operates as a compliance with the requisitions of the *preceding section*, upon the subject of witesses."—Rev. Code, § 1536, § 1552, *supra*.

If, then, we confine this last named section solely to the section which precedes it, and this, it seems to me, is the only proper construction, it was not intended to operate upon section *one* or section 2373 of the Revised Code, because the thing mentioned excludes the thing omitted.—Coke Litt. 210; Broom's Maxims; 2 Parsons Contr. 28; 5 Term, 21. Section 1535, then, does not repeal section *one* of the Revised Code. If both stand, section *one* shows *how* a signature must be *made* when the person can not write; and section 1535 shows *how* a conveyance for the alienation of land must be *executed*. It must have *one* attesting witness, when the contracting party has signed his own name at its foot, or an acknowledgment in lieu of such witness. Or it must have *two* attesting witnesses— *one* to complete the " subscription," and the *other* to attest the complete *making* of the conveyance, or an acknowledgment in lieu of this latter witness.—*Flowers v. Bitting*, Jan. T. 1871; *Grabill v. Barr*, 5 Barr, 441; *Asay v. Hoover*, 5 Barr, 36. This construction gives some validity to all the sections of the Code bearing on this important subject. And in view of it, the mortgage in this case was not sufficiently " made " to give it legal force as a conveyance entered into under the laws of this State, and entitle it to be acknowledged.

It also admits of grave doubt, whether the instrument relied on as a mortgage may not fall under the influence of the decision in *Wilkerson v. Cheatham*, at the present term.

The rehearing is denied, with costs.