# Scott's Administrator *et al.* *v.* Griggs.

*Bill in Equity to subject Lands to Payment of Purchase Money.*

1. *Vendor's lien for unpaid purchase money ; resale of lands.* — Where there is a valid resale of the lands between the parties, the lien for the unpaid purchase money is the same as in case of the original sale; but a valid resale can only be effected like the original sale, by a conveyance properly executed.

2. *Same : rescission of contract for sale of lands by married woman.* — The statutory power which a married woman has to sell and convey lands belonging to her separate estate (Rev. Code, § 2373), includes an implied power to rescind such contract for her own protection, and on such rescission she may secure the repayment of the purchase money which she has received by her promissory note, secured by a lien on the lands evidenced by writing; but the law will not imply such a lien in the absence of an express contract.

3. *Execution of deed by husband and wife.* — A deed for lands belonging to a married woman's statutory separate estate, which is signed and delivered by her on one day, and by her husband on a subsequent day, properly attested and proved or acknowledged, is valid and effectual to pass her title as of the day of its execution by her.

4. *Protection to bonâ fide purchaser for valuable consideration without notice.* — A trust concerning lands, whether implied by law or created by contract, cannot be enforced in equity against a subsequent purchaser for valuable consideration, without alleging and proving notice to him.

5. *Lien for purchase money of lands on rescission of contract of sale.* — When a contract for the sale of lands is rescinded by agreement of the parties, after the purchase money has been paid, if the parties intend to create a lien on the lands for the repayment of the purchase money, it is the safer (if not the indispensable) practice to create such lien by written agreement properly executed and recorded.

APPEAL from the Chancery Court of Macon.

Heard before the Hon. B. B. McCRAW.

The record in this case, and all the papers except the opinion of the court, have been lost or mislaid.

STONE & CLOPTON, for appellants.

WATTS & TROY, *contra.*

PETERS, J. — The record shows that there was an original bill filed in this case, and two amended bills. The original bill was filed on the 23d day of July, 1867. In it the complainant alleges that the defendants, Emily S. Mitchell and her husband, William J. Mitchell, on the 20th day of March, 1863, executed and delivered to him a promissory note, in the words following, to wit : " One day after date, we promise to pay Dr. J. G. Griggs, or bearer, sixteen hundred and nineteen $\frac{34}{100}$ dollars, for value received, March 20, 1863.

(Signed)          " WM. J. MITCHELL.

" EMILY S. MITCHELL."

At the time this note was executed and delivered, Mrs. Mitchell was a married woman, and the wife of said Wm. J. Mitchell, and " held " certain lots of land, particularly described in the bill, and which lay in the town of Tuskegee, in this State, " to her sole and separate use ; and the same was not liable to the debts or contracts of her said husband ; and she now *holds* said lots, with the improvements thereon, to her sole and separate use, and the same are not liable to the contracts or debts of her said husband ; and the said note is a *charge* against her said separate estate, and no trustee of her said separate estate was ever appointed." And the original bill

[Scott's Administrator *v.* Griggs.]

prays a sale of the lots for the payment of the debt secured by the note. This bill is sworn to by Dr. Griggs, and the defendants are required to answer it "upon their several corporal oaths." Mrs. Mitchell and her husband each separately answer this original bill, upon oath, as required. In her answer, Mrs. Mitchell denies that the note abovesaid is "a charge" upon her separate statutory estate. And her husband states in his answer, "that the said note was not given by said defendants for the repurchasing of said lots." Mrs. Mitchell's answer was sworn on the 18th day of September, 1867, and her husband's seems to have been sworn on the 9th day of the same month; but the record fails to show when they were filed. Thus far, this suit seems to have been a controversy solely between Dr. Griggs and Mrs. Mitchell, to subject property belonging to her as her separate estate to the payment of the note above set out. But, in her answer, and in her husband's answer, they disclose the fact that she had sold the lands in controversy to her son-in-law, J. T. Scott, and conveyed the same by deed to him, on the second day of June, 1867. This is the date of the deed, and it is signed both by Mrs. Mitchell and her husband, and is attested by two witnesses, in the manner required by our statute. Upon this disclosure of the title of Scott to the lands in controversy, Dr. Griggs amended his bill, and made Scott a party to the suit. This was the first amended bill, and it was filed on the 15th day of March, 1870. It was filed without verification by oath, and the answer of the defendants on oath, "was waived." This amendment alleges that Scott's deed "is fraudulent, and that no such deed was made" by Mrs. Mitchell and her husband, "at the time of the exhibition of your orator's bill of complaint, and not until some time in September, A. D. 1867, and as such the same was invalid as a conveyance when your orator's bill was filed; that said conveyance, if one is held by the said J. T. Scott, was entered into for fraudulent purposes, and with a notice of the lien of your orator upon said property." It is also alleged, that the deed was not signed by Mitchell, the husband, "until the sixth day of September, A. D. 1867;" that "said deed to said Scott was made without any valuable consideration; that said Scott never paid for said property, and only received said deed in order, if possible, to prevent the same being subject to the payment of the debt due your orator."

Scott, in his answer to the original and amended bills thus filed, avers "that he bought and paid for" the property in controversy from Mrs. Mitchell, as shown in her deed to him abovesaid, and that he claims it as his own. He also "denies that the said deed is fraudulent, or void, or invalid, or that the same was made for fraudulent purposes, or with a notice" to

him " of the lien pretended of complainant on the said property ; " and he denies that the complainant had any lien on the same." It also appears from Scott's answer, that the deed of June 2d, 1867, was executed on that day by Mrs. Mitchell, and some days afterwards by her said husband ; and that the deed was duly executed by both as it now appears. Scott also denies that he procured said deed without a " valuable consideration," and he avers that, " on the contrary, it was upon a valuable consideration," " to wit, about the sum of three thousand dollars ; " and that this sum was paid, " in money and note, to Emily S. Mitchell," before the filing of complainant's bill.

On the 13th day of October, 1870, the complainant filed a second amended bill, in which it is alleged that the property in controversy was claimed by Mrs. Mitchell, as her statutory estate, at and before the sale thereof in 1860 or 1861 to Dr. Griggs, and that there was a *resale* of said lands by Griggs to Mrs. Mitchell in 1863, at the time the note abovesaid was given ; that is to say, on the 20th day of March, 1863. And he repeats in this amended bill his right of lien against the lands abovesaid, the regularity of the sale to him, and the rescision of this sale, and the resale by himself to Mrs. Mitchell ; and avers Scott's knowledge of " notice of the circumstances under which the said lots were acquired and holden, and the sale to orator as set forth in the first paragraph of said bill, and of the repurchase and giving of the said notes as set forth in the second paragraph and this amended bill." This amended bill is not sworn to, and the answer on oath is waived. There is no evidence in the record that Scott was ever served with this amended bill, or that he ever answered it. But his answer to the first amended bill fully denies all the essential allegations of the second amended bill, which is, in effect, but the repetition of the matters of the first amended bill.

The chancellor, at the hearing, upon the pleadings and proofs, decreed the land liable for the payment of Dr. Griggs' note, and ordered a sale for that purpose. Since the decree in the court below, Scott has died, and the cause has been revived in the name of his representative and his heirs, who bring the case to this court by appeal, and they assign the decree of the court below for error.

1. The case divides itself into two branches. The one involves the interest of Mrs. Mitchell in the lands in controversy, and the other involves the interest of Scott, her son-in-law, in the same property. The transaction between Mrs. Mitchell and Dr. Griggs, on the 20th day of March, 1863, which resulted in the execution of the promissory note of that date,

by Mrs. Mitchell and her husband, for the sum of $1619.34, payable to Dr. Griggs, cannot be regarded as a resale of the lands purchased by Griggs from her in 1860 or 1861, and which are particularly described in the original bill of complaint. A *resale* of lands must be effected in the same manner that a sale of the same property could be accomplished in the first instance. Our statute fixes the law of such contracts in this State, and the courts cannot depart from it. This statute is in these words : " All persons, aged twenty-one years, and not under any legal incapacity, may alien their lands, and any interest therein, whether immediate or future, certain or contingent, by instrument in writing, or by their last will under the regulations prescribed by law ; " and " conveyances for the alienation of lands must be written or printed, on parchment or paper, and must be signed at their foot by the contracting party, or his agent having a written authority ; or, if he is not able to sign his name, then his name must be written for him, with the words ' his mark ' written· against the same, or over it ; the execution of such conveyance must be attested by one, or where the party cannot write, by two witnesses who are able to write, and who must write their names as witnesses ; " Or there must be a proper acknowledgement in lieu of witnesses. Rev. Code, §§ 1534, 1535, 1536 ; see also, *Robinson* v. *O'Neal*, 45 Ala. 526. In this case, there was no evidence by any " instrument in writing," signed by Dr. Griggs as required by law, conveying the lands in controversy, or any interest therein, to Mrs. Mitchell. Then, the evidence by written document of a resale, wholly fails ; " and the evidence of a resale and a part or full payment of the purchase money, and possession by the vendee, is disproven by the testimony of both Mrs. Mitchell and her husband, which was taken and submitted by the defendants in their behalf on the hearing before the chancellor. Then the proof does not sustain the allegation of the amended bill, that there was a resale of the lands mentioned by Griggs to Mrs. Mitchell.

Undoubtedly, there can be no just distinction drawn between a sale and a resale, and the rights of the vendor would be the same in either case, and the right of lien for the security of the purchase money would be preserved. . *Napier et al.* v. *Jones, Administrator*, 47 Ala. 90 ; 2 Story's Eq. §§ 1224, 1225, *et seq.* ; 4 Kent, pp. 151, 152, *et seq.* But the evidence here does not show a resale, either by written conveyance, or by parol. Rev. Code, § 1862, cl. 6. The testimony of Mrs. Mitchell and her husband fully contradicts this allegation. Besides, the complainant did not rely upon such a resale in his original bill ; and he must then have known all the facts of his

case on this point, that he did when he filed his amended bills. The original bill is put in on oath. If he had relied upon a resale, and the lien growing out of it, as a security for the payment of his promissory note set out in his bill, he would then have alleged it. But that bill is grounded altogether upon a different view of the facts. It is a bill simply to enforce a *charge* upon a married woman's separate estate. A chancellor cannot close his eyes to such discrepancies. Then, the complainant's case, as it rests upon a resale and a lien growing out of it, is not sufficiently supported by the proofs.

But there can be no doubt that there was a rescission and abandonment, by the parties on both sides, of the sale of the lands made by Mrs. Mitchell and her husband to Dr. Griggs, in 1860 or 1861. And it is equally clear that Mrs. Mitchell and her husband had the power to make such rescission. Her power to make the sale, which is beyond dispute, carried along with it a power to rescind it for her own protection. Rev. Code, § 2373 ; *Becton* v. *Selleck*, June Term, 1872. But the question still remains, whether, upon a contract for the rescission of a sale of lands, the law *implies* a trust in favor of the vendee by way of lien, as a security for the purchase money paid by the vendee to the vendor before the rescission ? If the law does not imply such a trust, then, in this case, it does not exist, because there is no instrument in writing, executed as required by our law, which creates such trust. Such an instrument is required by our statute. Rev. Code, § 1590. The complainant does not allege that such a trust exists in his favor, but he relies upon a resale, and a lien as an incident of the resale. I have not been able to find a satisfactory authority that such an implied trust exists. The testimony of both Mrs. Mitchell and her husband fully and directly denies its existence in this case. It is true that Dr. Griggs, in his testimony, asserts the contrary. But I am not able to say that his evidence ought to outweigh that of the two witnesses on the other side, Mrs. Mitchell and her husband. All stand here without impeachment, and all are equally worthy of credit. When this is the case, the rule of preponderance must be in favor of the greater number of witnesses. The testimony, then, does not support the assumption that a lien should attach to the land on the rescission of the sale, for the security of the note given by Mrs. Mitchell and her husband, for the refunding of the purchase money that had been paid to her. It is true that, where a vendor of lands goes into a court of chancery, and asks the rescission of a sale of lands upon grounds which would entitle that court to take jurisdiction, the rescission will not be allowed without requiring the vendor to return the purchase money to the vendee, which had been paid, and paying for the permanent and useful im-

provements made by the vendee during his possession, and also requiring the vendee to account for the rents and profits during the same period; and in such case it is usual to decree that the repayment of the purchase money shall be secured by a lien on the lands. But this rests upon quite a different principle from that of a contract between the parties. It is upon the principle that a party who asks equity shall do equity. *Foster* v. *Gressett's Heirs*, 29 Ala. 393; *Kennedy's Heirs & Executors* v. *Kennedy's Heirs*, 3 Ala. 434; 1 Story's Eq. § 64 *e*, 7th ed.

3. The second branch of the case is this. The proof shows that Mrs. Mitchell agreed to sell the lands in controversy to Scott, long before the bill was filed, and that she executed her deed to him on the second day of June, 1867. This was a month and twenty-one days before the bill was filed. It does not appear that there was then any controversy about the payment of Dr. Griggs' note, or that Scott had any knowledge of this debt, or of Dr. Griggs' claim. Mrs. Mitchell's testimony shows that the sale to Scott was without fraud, and *bonâ fide*, and for valuable consideration, which had been duly paid to her by Scott. Neither the testimony of Dr. Griggs, nor his witness, Mr. Mullen, contradicts this evidence of Mrs. Mitchell, which is supported by that of her husband. It also appears that Mitchell did not join in his wife's deed to Scott until some time in September, 1867. This was after the filing of the bill. But this delay of Mitchell to join his wife in the conveyance to Scott, could not, in a court of equity, be permitted to defeat Scott's title. Mitchell's signature to his wife's deed was a ratification of her act, in which he could have joined her in the first instance. Such ratification, for the sake of justice, has relation back to the time of the act done; that is, the second of June, 1867. *Nelson* v. *Morgan*, 43 Ala. 586; 4 Kent, 454, 455, *marg.*

4. There is no evidence that the sale of the lands mentioned in Scott's deed, was made with intent to hinder, delay, or defraud Dr. Griggs, in the collection of his note against Mrs. Mitchell and her husband. It was not, then, fraudulent. Rev. Code, § 1865. This transaction, as explained by Mrs. Mitchell and her husband, seems to have been consistent with fair dealing, and honestly entered into. I also think the proofs wholly fail in fixing any notice of Dr. Griggs' claim of lien upon the lands mentioned in his bill, upon Scott, until long after Scott's purchase of the same lands from Mrs. Mitchell, on the second of June, 1867. Dr. Griggs does not seem to have taken this view of his case himself, until the filing of his first amended bill, which was done on the 15th day of March, 1870, almost three years after the date of Scott's purchase. Then, so far as the testimony shows, Scott occupies the position of a purchaser

[Jay v. Martin.]

for valuable consideration, without notice of Dr. Grigg's lien, if he had one.    This protects his title.

5. The statute law of this State requires that alienation of lands, or any interest in lands, or trust concerning lands, must be effected by instrument in writing, executed in a certain manner pointed out by our statute. Rev. Code, §§ 1534, 1535, 1590, 1591, 1592, 1862. This is the general rule, with certain implied trusts excepted out of it.    One of these implied trusts is the *lien* of the vendor for the security of the payment of the purchase money.    It may, therefore, be said that it is the safer, if not the indispensable practice, on the rescission of a sale of lands by the parties themselves, without the aid of a Court of Chancery, if they intend to *create* a *lien* on the lands for the repayment of the purchase money received by the vendor before the rescission and not paid back, to do so by written agreement, properly executed and recorded for that purpose.

The allegations of the bill and amended bills do not seem to rely upon a *lien*, separate and apart from a *resale ;* and the proofs do not establish a resale.    There was, then, no lien sufficiently proven.    In this, the chancellor's decree was against the weight of the evidence ; and this court, proceeding to render the judgment that the court below should have rendered, doth order, adjudge, and decree, that the complainant's bill be dismissed out of this court, and that he pay the costs in this court, and in the court below.

NOTE BY REPORTER. — The following opinion was delivered on a subsequent day of the term, in response to an application for rehearing : —

PETERS, J. — This cause was carefully considered in the first instance, and a review of it does not lead me to the conclusion that there is any sufficient grounds for a rehearing. The rehearing is therefore denied, with costs.