155 So. 79

**METROPOLITAN LIFE INS. CO. v. ESTES et al.**

**6 Div. 566.**

Supreme Court of Alabama.

May 17, 1934.

Cabaniss & Johnston and Smyer, Smyer & Bainbridge, all of Birmingham, for appellant.

J. C. Burton, of Birmingham, for appellees.
Brief did not reach the Reporter.

THOMAS, Justice.

The suit was statutory (Code 1923, § 7452 et seq.) ejectment.

Count 2, upon which the trial was had, was stated in Code form.

Defendants' pleas were the general issue, and special pleas alleging that the property sought to be mortgaged was and is the homestead of defendants; that the plaintiff claims title to said property under a foreclosure deed which is founded on a mortgage purporting to be signed and acknowledged by the defendants; that said mortgage was not signed and acknowledged by defendants as required by the statute (Code 1923, § 6838 et seq.).

The principal question for decision is presented by the refusal of the general affirma-

tive charge requested by the plaintiff. The rules governing the giving and refusal of such instructions need not be restated. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135.

We have examined the evidence and there are conflicts, or reasonable inferences thereof, that justified the refusal of such charge and warranted the submission of the controverted facts—that of the due execution of the mortgage by Estes and wife to Jemison & Co., Inc.,—to the jury.

The defendants' testimony was unequivocal and positive, to the effect that they, or either of them, did not acknowledge the execution of the mortgage; that they did not know the officer purporting to have taken their acknowledgments at the time or until after the mortgage loan was made; that one Feld, an employee of Jemison & Co., came to their home with the mortgage and had them sign; that the alleged officer making the certificates of acknowledgment was not present; and that thereafter they never appeared before such officer and acknowledged before him the execution of the mortgage.

Defendants further testified that at the time the property sought to be so incumbered and conveyed was their homestead; that Jemison & Co. negotiated or made the loan; that they received the proceeds thereof, and subsequently made payments on account of that mortgage debt.

The mortgage in question is not witnessed, but purports to have been acknowledged by the respective grantors before the notary public making the alleged certificates of acknowledgments which are in the form prescribed by the Code for a husband and wife, and there purports to have been a separate acknowledgment by the wife.

The alleged notary public as a witness for plaintiff testified that the signatures to the certificates affixed to the mortgage were those of witness; that he had no "positive recollection of taking the acknowledgment to those papers"; that he recalled having seen Mr. Estes before, but as to whether or not he recalled ever having seen Mrs. Estes before, testified merely that "her face is familiar," yet he could not swear that they came before him and "acknowledged said mortgage," saying, "I haven't got a sufficient recollection of it." He further testified that he handled several hundred transactions that year and did not know whether witness "closed this transaction" unless his signature was on the check orders, or somewhere in the file that

would so indicate; that he had no independent recollection as to the matter.

On cross-examination that witness stated that he could not say positively that he had a record of Mr. and Mrs. Estes acknowledging that thing before him; that the chances are that he did; that if he had such a record (section 9244, Code) he would say "that I destroyed it"; that he took acknowledgments generally at "the office of Jemison and Company," and "occasionally went out of the office to take acknowledgments"; that he did not know whether he went out to the residence of Mr. and Mrs. Estes to take their acknowledgments to this mortgage, only knew where their home was located; had no recollection of having ever been in the house; did not recall where they were living at the time this mortgage was made; could not say whether Mr. Estes, Mrs. Estes, or Mr. Feld was there, nor whether as a matter of fact he (Starke) examined the mortgagor at the time the paper was signed; that as a matter of fact, he did not know what transpired in this case. Witness concluded by saying, "All I know is that this is my signature on this mortgage."

The mortgage was to Jemison & Co., Inc., and duly transferred by it to the plaintiff in ejectment. There was foreclosure and auction deed to the plaintiff. And there was an alleged lease for rent in the name of the mortgagors to the Metropolitan Life Insurance Company of subsequent date, reciting that the latter was the owner of the property under foreclosure deed.

The mortgagors deny acknowledgment before the notary public in question, saying Mr. Feld, acting for Jemison & Co., was the only person at their home when he procured the execution of the mortgage, and that their signatures were not acknowledged, that Mr. Feld did not witness the execution, and was not such an officer.

The witness, Walter F. Estes, said:

"I signed the papers out there on the lot. Mr. Frederick A. Feld brought them out to me. 'As to all was present at that time,' I say, 'Mr. Feld, Mrs. Estes and myself.' Just we three were present. When Mr. Feld brought those papers out there, he said it was out of the ordinary, that it wasn't customary for the man who makes the loan to take acknowledgments of the signatures; that it had been agreed in that case, it was all right. He stated that they were going to let him take the signatures. We signed the mortgage—this paper that is in question. I

signed the paper out there and Mrs. Estes signed it. When she signed it we three were together in the same room. Mr. Feld is a reserve officer and he was called to camp two weeks ago. He is in the Reserve Officers Corps. He was here in Birmingham until two weeks ago. He was called out of the City by the United States Government. 'As to whether I know where he is now,' I will say, 'I judge he is still in camp.' * * * Mrs. Estes signed that. She signed it right there in my presence. She never went out of my presence while he was out there. We all never did separate. I do not know Mr. George C. Starke. I don't know that I have ever seen him. Mr. George C. Starke never took my acknowledgment. · In answer to the question: 'Did you go to Jemison and Company's office a few days after you signed the mortgage?' I say, 'I went there right soon for the check.' At the time I got the check I signed a receipt for it. Nobody took my acknowledgment while I was in Jemison and Company's office. My wife did not go with me and Andy A. Hinkle was the party there with me. Mr. Hinkle was the only person who went there with me at that time. Mr. Hinkle was the man who built that house. I had no knowledge whatsoever as to whether Mrs. Estes ever went down there and had her acknowledgment taken. A Notary Public never came around at any time while I was present to take an acknowledgment of Mrs. Estes."

Mrs. Estes, one of the defendants, testified:

"The only thing I know about the loan that was negotiated in 1927 is that they brought out some papers for me to sign. Mr. Fred A. Feld brought the papers. Mr. Feld is our next door neighbor. I had not discussed the loan with Mr. Feld. I understand that Mr. Feld was connected with Jemison and Company at that time. I don't know the exact hour in 1927 that Mr. Feld came over there with some papers for me to sign, but it was late in the afternoon. Mr. Estes always quits work at six and he came early that afternoon because he knew Mr. Feld was coming. He had told me that he was coming. Mr. Feld did come over to our house and Mr. Estes, Mr. Feld, myself and a year old baby were present. No one came with Mr. Feld. * * * He told me though that he was going to bring some one with him. When Mr. Feld came over, we had a table in the center of the room and Mr. Estes signed and he took the baby and I sat down and signed and if Mr. Feld ever signed, I don't know it; I don't recall that. I signed my name, but I didn't even read what I signed. I don't recall that Mr. Feld told me what I was signing. I do recall that he said he was waiving some right. That is all I recall, that he said. Mr. Estes held the baby while I signed the paper. I don't recall that Mr. Feld told me at the time he came over there that he had a paper for me to sign and that it was a mortgage. The paper that you hand me (the mortgage), was handed to me and I took it and signed it. That is my writing and that is my signature. That is where I signed the paper. * * * I do not know a man by the name of George C. Starke and I never saw him in my life. Yes, I have heard of him. I have never really heard of him more than I saw his name on the court house record. I saw his name on the record where the mortgage was recorded. I never heard of him until then. That was the only time I ever signed any paper in connection with this loan that I know of. I signed one paper. I didn't sign any after that, and if I signed more than one then, I don't recall it."

▇ In respect to a due execution under their pleading—the general issue and of non est factum—the mortgage being in evidence and the certificates of acknowledgment being in due form, a prima facie case was made out for plaintiff, and the burden then rested upon the defendants of proving that the property constituted the homestead of the mortgagors (McClendon v. Equitable Mortgage Co., 122 Ala. 384, 25 So. 30; Weldon, as Receiver, etc., v. Bates (Ala. Sup.) 155 So. 560), and that there was a failure of statutory requirements for execution and acknowledgment of such mortgage as would defeat its validity.

It is uncontroverted that the location of the property was in the city, and that its value was in excess of that allowed by law for a homestead exemption. Section 7882, Code. There was no proceeding in equity had, or occasion therefor, as provided in section 7913, for the sale of the homestead and the setting apart out of the proceeds thereof, the homestead exemption, separated from that of excess value.

It is insisted that it has been declared that a purchaser at a sale under the statute (section 7913, Code) acquires a valid title to the homestead interest, without the voluntary signature and assent of the wife (Thompson v. Sheppard, 85 Ala. 611, 5 So. 334); that where a husband, alone, executes a conveyance of lands, which includes the homestead exemption and excess thereof, although the conveyance is invalid as to the homestead ex-

emption, such a conveyance is valid in so far as it alienates any excess in quantity or value over the homestead exemption. And that there are abundant authorities (there being due execution by the husband and not by the wife) to the effect that appropriate proceedings may be had that the homestead be delimitated and admeasured from excess, and the conveyance of the excess to the homestead exemption be declared valid and such excess subjected as conveyed. McGuire v. Van Pelt, 55 Ala. 344, for cancellation and redemption; Watts v. Burnett, 56 Ala. 340, bill to enjoin sale of homestead; Strauss & Steinhardt v. Harrison, 79 Ala. 324, action for damages for defeat of landlord's lien; Thompson v. Sheppard, 85 Ala. 611, 5 So. 334, to enforce vendor's lien on real property; Williams v. Kilpatrick, 195 Ala. 563, 70 So. 742, a bill for specific performance; Deramus v. Deramus, 204 Ala. 144, 85 So. 397, for sale of lands and personal property for division.

These decisions are beside the instant case. They proceed, under the statute, on the fact that the husband has alienated the homestead exemption and other lands not subject thereto "by deed, mortgage, or other conveyance," without the voluntary assent of the wife, required by law. There is no such admission by the husband or the wife in this case; on the other hand, there is the positive denial of the fact of due execution of the conveyance by the husband and wife, or of the mortgage upon which the right of recovery in this statutory action of ejectment depends. The statement of the notary that it bore his signature was not conclusive of due execution, and was evidence tending to show execution. This was a question for the jury presented. Mitchell v. Bottoms, ante, p. 225, 153 So. 424, and authorities.

The act of certifying an acknowledgment by a proper officer as prescribed by statute (Code 1923, § 6845), is the exercise of a judicial function, conclusive of the fact of certification, when that officer has acquired jurisdiction by having the grantors and instrument to be acknowledged before him as such officer and then and there exercises jurisdiction in the premises and within the statute. In such a case the resulting certificates are conclusive of the truth of the facts stated therein (within the statute), until successfully assailed for duress or fraud and within the rules that obtain. Fies & Sons v. Lowery, 226 Ala. 329, 147 So. 136; Dewberry v. Bank of Standing Rock, 227 Ala.

484, 150 So. 463; Weldon, as Receiver, etc., v. Bates, supra.

The questions of fact in this case, on which such jurisdiction and validity rest, are duly challenged in the pleadings and evidence, and within its province, the jury drew the conclusion of failure of statutory compliance and invalidity in the attempted execution of the mortgage, as an act within the law of the husband and wife. Sections 6838, 8269, Code.

It is declared that an attempted conveyance of land in any other manner than that prescribed by the statute (section 6838, Code) is not legally made. O'Neal v. Robinson, 45 Ala. 526; Weil & Brother v. Pope, 53 Ala. 585; O'Neal v. Tennessee Coal, Iron & Railroad Co., 140 Ala. 378, 387, 37 So. 275, 1 Ann. Cas. 319; Copeland v. Dabbs, 221 Ala. 489, 129 So. 88; Hollimon v. McGregor, 225 Ala. 517, 143 So. 902; Gibbs v. Wright, 5 Ala. App. 486, 57 So. 258. The statutes are mandatory. Code, § 6838, and § 7883 (amended by Acts 1931, p. 183). And it has been further declared, that a conveyance of the homestead by the husband, where the area is within the limits prescribed by law, without the voluntary signature and assent of the wife properly certified, is not alone inoperative as to the wife, but absolutely void as against the husband, as a conveyance of the title either present or prospective. Owens v. Harris, 222 Ala. 461, 133 So. 6; Miller v. Marx, 55 Ala. 322; McGuire v. Van Pelt, 55 Ala. 344; Halso v. Seawright, 65 Ala. 431; Seaman v. Nolen, 68 Ala. 463; Slaughter v. McBride and Latimer, 69 Ala. 510; De Graffenried v. Clark, 75 Ala. 425; Alford v. Lehman, Durr & Co., 76 Ala. 526; Thompson v. New England Mortgage Security Co., 110 Ala. 400, 404, 18 So. 315, 55 Am. St. Rep. 29; Sims v. Gunter, 201 Ala. 286, 78 So. 62; Phillips v. Smith, 214 Ala. 382, 383, 107 So. 841; Beaty v. Washam, 205 Ala. 92, 87 So. 337; Strauss & Steinhardt v. Harrison, 79 Ala. 324; 45 A. L. R. 403, note.

In Williams v. Kilpatrick, 195 Ala. 563, 70 So. 742, it was declared, that when the owner of a homestead which is greater in value than $2,000, or in area than 160 acres, sells a portion thereof, leaving, including the dwelling and contiguous land, the maximum value or area allowed by law for the homestead, the act amounts to "the selection of a homestead to the exclusion of the alienated tract," and the provisions of section 7883 (4161) of the Code, with respect to the alienation of homesteads, have no application. This was on authority of De Graffenried v. Clark, 75 Ala. 425 (where the excess was that

of area), cited in the brief of appellant's counsel. Burgin v. Hodge, 207 Ala. 315, 93 So. 27; Alabama Power Co. v. Cornelius, 211 Ala. 245, 100 So. 207. There is no question presented in this case of a selection by the husband of the homestead exemption. The sole issue of fact under the pleading (McClendon v. Equitable Mortgage Co., 122 Ala. 384, 390, 25 So. 30) was that of an unlawful execution by the husband and wife of a mortgage (to their homestead in a city) to Jemison & Co., and thereafter transferred to and foreclosed by the appellant purchasing at such attempted foreclosure sale. We do not agree with the appellant, that the mortgagors were remitted to a bill in equity, under section 7913 of the Code, to present the question of due execution vel non of this conveyance of their homestead.

■■ There was the plea of the general issue and that of non est factum. The plea of the general issue imposed upon plaintiff the burden of proving the execution of the conveyance on which it relied to show title in the mortgage company, unless prima facie this mortgage was self-proving. If the mortgage executed by the defendants appeared to be properly acknowledged by the grantors, their execution could have been assailed by them under the plea of not guilty, by proving the requisite facts to avoid the prima facie effect of the acknowledgment. It is established, that the only appropriate plea in the trial of this action (ejectment) is not guilty, and under it, anything that operates as a bar to the action may be given in evidence. Section 7456, Code; McCormick v. McCormick, 221 Ala. 606, 130 So. 226; McClendon v. Equitable Mortgage Co., 122 Ala. 384, 390, 25 So. 30; Richardson v. Stephens, 122 Ala. 301, 25 So. 39; Richardson v. Stephens, 114 Ala. 238, 21 So. 949; Bynum v. Gold, 106 Ala. 427, 17 So. 667; McQueen v. Lampley, 74 Ala. 408; Buxbaum v. McCorley, 99 Ala. 537, 13 So. 5; Seaboard Air Line Ry. v. Banks, 207 Ala. 194, 92 So. 117; Chitwood v. Blackwood, 220 Ala. 75, 124 So. 110.

■ We find no reversible error in overruling the defendants' demurrer to the plea of non est factum (section 7663, Code); it was not merely the conclusion of the pleader, but gave notice or indicated that there was not a due execution of the mortgage as to the acts of signing and acknowledgment thereof by the grantors-defendants.

■ In argument to the jury, counsel should be permitted to state the evidence and comment thereon within the accepted reasonable limitations. American Ins. Co. of Newark,

N. J. v. Fuller, 224 Ala. 387, 140 So. 555, and authorities; Mitchell v. State, 114 Ala. 1, 5, 22 So. 71; Cross v. State, 68 Ala. 476; 2 R. C. L. § 9, page 418.

■ Mr. Estes testified without objection that he did not subpœna Mr. Feld or request his attorney to have this done; admitted Feld was in Birmingham "two weeks ago" and "judged he was still in camp in the Reserve Officers Corps." His cross-examination developed the fact that Mr. Estes had not "talked with Feld at all" about the case, though Feld had lived next door to him when the mortgage was closed. Counsel for plaintiff stated: "Mr. Estes testified without objection that he didn't subpœna him, 'Feld,' and he didn't request his attorney to subpœna him." Whereupon the objection by defendants was sustained and exception reserved. The court stated that "neither side can comment on the failure of either side of the suit to bring any witness who was available to both sides." Counsel for defendants remarked: "He was your (plaintiff's) employee, he wasn't ours." To which adverse counsel replied: "In this case, the witness wasn't available to us. The evidence shows that Mr. Estes didn't say one word to any of us about his defense, until yesterday. We didn't know. We didn't know that he would be necessary as a witness in the case. I say that Mr. Estes knew that he was a witness, and Mr. Estes, on direct examination, testified that he didn't subpœna him and didn't request his attorneys to subpœna him. That is the evidence in the case, and I respectfully submit that I have a right to comment on it." The court sustained the objection and plaintiff excepted.

It is asserted that the question of whether this evidence by Estes was legal or competent is immaterial; if immaterial, evidence was before the jury and that counsel had the right to argue the same to the jury. Birmingham Railway & Electric Co. v. Wildman, 119 Ala. 547, 24 So. 548; Windham v. Newton, 200 Ala. 258, 76 So. 24. The argument of immaterial evidence before the jury without objection is not the exact question now presented, but that of adverse comment as to the absence of a witness asserted to have been accessible to both parties. 64 C. J., p. 270, § 290; p. 273, § 292; p. 269, § 289. It was not in the class of evidence in possession of another not produced. Cabaniss v. City of Huntsville, 217 Ala. 678, 117 So. 316.

Statements of the rule that obtains in such a matter and comment in argument have been varied according to the justice and exi-

gencies of the particular case. Brock v. State, 123 Ala. 24, 26 So. 329; Coppin v. State, 123 Ala. 58, 64, 26 So. 333; Collins v. State, 217 Ala. 212, 115 So. 223; Coosa Portland Cement Co. v. Crankfield, 202 Ala. 369, 370, 80 So. 451; Walker v. Stephens, 221 Ala. 18, 127 So. 668; Alabama Power Co. v. Talmadge, 207 Ala. 86, 95, 93 So. 548. The general question is dealt with by text-writers. 1 Greenleaf on Evidence, § 82; 1 Wigmore on Evidence, §§ 285–288; 2 Chamberlayne on Modern Law of Evidence, § 1075; Blatch v. Archer, 1 Cowper (Eng. King's Bench) 63, 66.

It was important that the evidence of Feld be had. He was a former employee of Jemison & Co. and a neighbor of the mortgagors. His evidence was equally available to each of the parties litigant. There was no error in the trial court declining to allow adverse comment as to his absence.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.