345 So.2d 631 (1977)
A. N. PEDDY
v.
Bessie K. MONTGOMERY.
SC 1693.
Supreme Court of Alabama.
April 22, 1977.
Rehearing Denied May 20, 1977.
James R. Owen, of Owen & Ball, Bay Minette, for appellant.
Norborne C. Stone, Jr., Bay Minette, for appellee.
SHORES, Justice.
This is an appeal from a summary judgment granted in favor of the defendant-appellee denying specific performance of an alleged contract for the sale of real estate between A. N. Peddy (purchaser) and Bessie K. Montgomery (seller). The central issue is the constitutionality of Title 34, § 73, Code of Alabama 1940, Recompiled 1958, which denies a wife the power of alienating or mortgaging her lands without *632 the assent and concurrence of her husband.[1] A subsidiary issue is whether the appellant would be entitled to damages because of the refusal of the appellee's husband to join in a conveyance to the appellant, should the court uphold the constitutionality of Title 34, § 73.
Appellant contends that Title 34, § 73, is in violation of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States, as well as Article 1 of the Alabama Constitution of 1901, in that it discriminates against the wife in favor of the husband. Undeniably, husband may convey his land in Alabama without the signature of the wife as a co-grantor, though the grantee takes subject to the wife's dower interest. In fact, the purchaser may withhold a portion of the purchase price to indemnify against her dower interest. Sadler v. Radcliff, 215 Ala. 499, 111 So. 231 (1927). On the other hand, because of this statute, if the wife conveys or mortgages her separate property without the signature of the husband as a co-grantor, the conveyance or mortgage is void.
"Except where one or more of the exceptions noted in the statute exist, a deed is void which is executed by a wife without the assent and concurrence of her husband being manifested in the manner prescribed. [Citations Omitted]." Edwards v. Edwards, 259 Ala. 374, 376, 66 So.2d 919, 921 (1953).
Contracts made by the wife for the sale of her lands without the concurrence of the husband at the time the contract is made are also void because of this statute. Obermark v. Clark, 216 Ala. 564, 114 So. 135 (1927). This defense is raised by appellee, seller, in the instant case.
This section contains the only statutory provision left in the law of Alabama limiting the right of a married woman to contract.
Appellee contends that not only is the statute constitutional, but that the issue need not be reached because the appellant did not properly raise the issue, and because he lacks standing.
Appellee argues that the constitutional question was not properly before the court, because the appellant amended his complaint to include the allegation that Title 34, § 73, ". . . upon which the defendant relies for a defense . . . is unconstitutional," rather than having instead moved to strike the appellee's defense under Rule 12(f), ARCP, which provides that "if no responsive pleading is permitted. . . upon motion . . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."
A motion to strike under Rule 12(f) is the normal and proper procedure to test the legal sufficiency of a defense; however the rules must be read with the caveat that they ". . . shall be construed to secure the just, speedy and inexpensive determination of every action." Rule 1, ARCP. The amendments to the complaint were allowed by permission of the court. See Rule 15, ARCP. This court is no longer willing to avoid an issue clearly presented because of some alleged technicality in pleading.
The appellee also contends that the appellee also contends that the appellant lacks standing to test the constitutionality of Title 34, § 73, because he is not a member of the class against whom it operates. *633 We disagree. This court has frequently held that the constitutionality of a statute may be presented by a person adversely affected by its operation. State v. Friedkin, 244 Ala. 494, 14 So.2d 363 (1943). Although Mr. Peddy, the purchaser under the alleged contract upon which specific performance is sought, is not a member of the class against whom Title 34, § 73, operates, he clearly has a personal stake in the determination of its constitutionality. If it is constitutional, his right to compel specific performance of that contract, assuming he can meet the requirements for such relief, is defeated. If the statute is unconstitutional, he has a right to proceed in his efforts to compel specific performance.
We, therefore, turn to the constitutional question presented. There is no dispute that Title 34, § 73, treats married women differently than married men and unmarried females. The question is whether that difference in treatment is permissible under the Constitution of Alabama and the Constitution of the United States.
Any doubt about whether the Constitution of Alabama contained an equal protection provision was dispelled in Pickett v. Matthews, 238 Ala. 542, 192 So. 261 (1939), where it was held that §§ 1, 6 and 22 of Article 1 of the Constitution of 1901, taken together, guarantee the equal protection of the laws, and prohibit one from being deprived of his inalienable rights without due process. In 1871, referring, of course, to an earlier constitution which contained the same provisions as the 1901 version, this court said:
". . . According to our constitution, `All men are created equal;' and the word `man' includes persons of both sexes. Then, the wife is the peer and equal of the husband in all her great rights of life, liberty, and the pursuit of happiness. Const.Ala.1867, Art. 1, § 1; Rev.Code, § 1; Const.U.S. XIV Amend. § 1. . ." O'Neal v. Robinson, 45 Ala. 526, 534 (1871)
If, therefore, Title 34, § 73, violates the Constitution of Alabama, which guarantees to the citizens of Alabama equal protection of the laws, a right is also reserved to them by the Constitution of the United States, we need not rest our conclusions on the federal constitution, although obviously cases defining rights protected by the equal protection clause of that document are helpful inasmuch as the rights protected by the state constitution are the same.
No great purpose would be served in restating the status of married women at common law as regards real estate owned by them. That has been done. See Holt v. Agnew, 67 Ala. 360, 364, 365 (1880), where Chief Justice Brickell said:
"By the common law, husband and wife were regarded as but one person, for many purposes. The legal existence of the wife was lost, or, as most often expressed, merged in that of the husband. She was without capacity to contract, and had not the administration of her property. By the marriage, if she was seized of an estate of inheritance, the husband became seized thereof, taking the rents and profits during their joint lives, and, by possibility, during his life. . . . Her chattels real passed to the husband, who had power to sell, assign, or make other disposition of them, at pleasure. . ."
The foregoing was true, not only in Alabama, but in most, if not all, of the other states. In 1839, Mississippi passed the first of the Married Women's Property Acts, and other states rapidly followed. This legislation was designed to remove many of the severe disabilities placed on married women by the common law. The first of a series of such laws was enacted in Alabama in the 1840's. L. Kanowitz, Sex Roles in Law and Society (1973). These acts had for their purpose securing to married women their separate estates, and generally provided, insofar as material to this discussion, that under certain circumstances a married woman could go into chancery to have herself declared a "free-dealer" which, in turn, allowed her to purchase and hold property in her own name as if she were a femme sole.
*634 The next sweeping legislation came in 1887. Section 8 of Act No. 41, General Laws of Alabama 1886-87, is now Title 34, § 73. It was amended in 1885 to require that the husband assent to his wife's mortgaging her property, and remained in that form until 1943 when the provision relating to leases was added.
In the interim between 1846, when the first of the married women's property acts was enacted in Alabama, and 1887, when such legislation took on its present form, Alabama acquired a new constitution. The Constitution carried the following provision for the first time:
Article XIV, Section 6, recites:
"The real and personal property of any female in this State, acquired before marriage, and all property, real and personal, to which she may afterwards be entitled by gift, grant, inheritance, or devise, shall be and remain the separate estate and property of such female, and shall not be liable for any debts, obligations and engagements of her husband, and may be devised or bequeathed by her, the same as if she were a femme sole."
In Holt v. Agnew, supra (1880), Chief Justice Brickell, said of this provision of the 1868 Constitution:
". . . For twenty years before the present provision was introduced into the constitution, the statutes had enlarged the capacity of married women to take and hold property, and had abrogated the common law rights of the husband to the estate, real or personal, of the wife. The purpose of the constitution was the prevention by legislative enactment of a restoration of the common law, and the preservation of the enlarged capacity of the wife. . . ." (67 Ala. at 365)
Although many states enacted statutes similar to Title 34, § 73, in the nineteenth century, by 1913, the number of states retaining such laws had been reduced to twenty. L. Foster, The Legal Rights of Women, 46-70 (1913). By 1972, Alabama was the only state in the Union to retain the requirement that a husband must join in his wife's conveyances. See 47 N.Y.U.L. Rev. 1033, 1077 (1972). The author of that article suggests that the statute is of dubious constitutionality.
The purpose of the Married Women's Property Act as first enacted in Alabama has been described by Justice Peters of this court, writing in 1871, O'Neal v. Robinson, supra. His discussion concerned a predecessor statute which required not only that the husband join in the conveyances but, as to the homestead, the wife's signature be separately acknowledged, and in addition, two witnesses were required to witness her signature. All of these statutory requirements were met in that case, except that the two witnesses did not appear on the wife's mortgage of her homestead. Justice Peters said:
"Doubtless these precautions were imposed in order to make the security of the wife's statutory separate estate as great as possible. The wife being, in a greater or less degree, in the power of the husband. . . both by the precepts of the church and the maxims of the law, it was intended to furnish her with the highest possible security against fraud and deception, and against that unfriendly domination of the husband over her and her estate which experience has long taught legislators and statesmen has of-tenest proved detrimental to her estate, in spite of all her feeble resistance, as well as all her prayers and tears. . .
". . . There is a wide protective force in the presence of two attesting witnesses that is altogether taken away by a mere formal acknowledgment, which may be wholly the effect of a constraint against which the wife has no protection.. . .
". . . Just where the wife needed the presence of two attesting witnesses, one of whom, at least, might have been selected amongst her own intelligent friends, who could have aided her with proper advice, the two witnesses are altogether left out. I do not say this to cast any suspicion upon the honesty of this transaction. But the law is intended to *635 provide for the protection of the wife. This would not be needed, unless she was presumed to be sometimes weak, ignorant, or overpowered. . . ." (45 Ala. at 533, 536)
This court has continued to recognize that this legislation was based upon the presumption that the husband is the dominant party to the marriage. In Smith v. Smith, 245 Ala. 420, 421, 17 So.2d 400, 401 (1944), Justice Bouldin, writing for the court, said of this statute:
"This statute recognizes the function of the husband in safeguarding the wife against imposition, etc. So in all normal situations the husband is presumed to be the dominant party in transactions, inter vivos, with the duty to shield the wife against oppressive dispositions of her property . . ."
The court, in that opinion, noted, however, that:
"Since our married woman's laws have given her an independent status in the ownership, use and enjoyment of her property, her rights to her own earnings, to engage in business, as well as the exercise of full political rights unknown at common law, it may be said the lawful domination of the husband is much changed, and his dominance in fact as a matter of common observation is not so universal as in other days. . . ." (245 Ala. at 421, 17 So.2d at 400.)
Although the purpose of this legislation was to protect the wife, and "not limit her power of alienation," Newman v. Borden, 239 Ala. 387, 194 So. 836 (1940), the issue is reduced to whether it is constitutionally permissible when its effect is to treat married women, in dealing with their separate property, different from all other adult persons. Single women, divorced women, widowed women and all men are free to transact business, contract, and alienate property, free of all legislative restraints. Only married women are perceived to require restrictions on one of such rights, i.e., alienation of their property, theoretically to protect them against their own actions. In the exercise of all other rights, they are as unrestricted as all other adults.
In addressing this issue, we are not called upon to decide whether all legislation which contains a so-called "gender-based classification,"[2] violates the constitution, either of this state or of the United States. We decide only the issue before us, i.e., whether the provision of Title 34, § 73, which, except in certain enumerated circumstances, mandates that a wife ". . . cannot alienate or mortgage her lands, or any interest therein, without the assent and concurrence of the husband . . ." denies equal protection of the laws to married women.
The United States Supreme Court has dealt with gender related classifications contained in various statutes within the last few years. In Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1972), that court held that an Idaho statute which gave a mandatory preference to males over females to act as administrators of estates violated the equal protection clause of the constitution. In Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), the issue was whether the Due Process Clause of the Fifth Amendment[3] prevented requiring a married woman Air Force Officer to show, in fact, that her spouse was dependent on her for over one-half of his support for the purpose of obtaining increased quarters allowance and medical and dental benefits, while a male member of the Air Force is allowed to claim his spouse as a dependent without such proof. The court held that the challenged statutes violated the constitution, although *636 only a plurality joined Justice Brennan, who would hold that all gender classifications are inherently suspect.
In Stanton v. Stanton, 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975), Mr. Justice Blackmun, writing for a majority of the court, held that a Utah statute establishing that minority for males extended to age twenty-one and for females to age eighteen was a violation of the equal protection clause. The argument that ". . . `. . . it is the man's primary responsibility to provide a home . . .' . . . that `it is a salutary thing for him to get a good education and/or training before he undertakes those responsibilities,' . . . that `girls tend generally to mature . . before boys' . . . and that `they generally tend to marry earlier'." (95 S.Ct. at 1376) was rejected, the court observing:
". . . No longer is the female destined solely for the home and the rearing of the family, and only the male for the marketplace and the world of ideas. See Taylor v. Louisiana, 419 U.S. 522, 535, n.17, 95 S.Ct. 692, 700, 42 L.Ed.2d 690 (1975).[4] Women's activities and responsibilities are increasing and expanding. Coeducation is a fact, not a rarity. The presence of women in business, in the professions, in government and, indeed, in all walks of life where education is a desirable, if not always a necessary antecedent, is apparent and a proper subject of judicial notice. If a specified age of minority is required for the boy in order to assure him parental support while he attains his education and training, so, too, it is for the girl. To distinguish between the two on educational grounds is to be self-serving . . ." (95 S.Ct. at 1378)
Similarly, in Frontiero, supra, the court discussed one of the arguments raised unsuccessfully in Reed, supra (but which was not brought out in the Reed opinion):
". . . Moreover, appellee argued that the mandatory preference for male applicants was in itself reasonable since `men [are] as a rule more conversant with business affairs than . . . women.' Indeed, appellee maintained that `it is a matter of common knowledge, that women still are not engaged in politics, the professions, business or industry to the extent that men are.' And the Idaho Supreme Court, in upholding the constitutionality of this statute, suggested that the Idaho Legislature might reasonably have `concluded that in general men are better qualified to act as an administrator than are women.'" (411 U.S. at 683, 93 S.Ct. at 1768).
This argument, too, was rejected by the court.
In the instant case, the appellee argues that to hold that the challenged statute violates the Constitution of this state would be to destroy ". . . the basic concepts of the common law ownership of real property and the right and prerogative of our legislature to govern that part of our social *637 and economic life." It is also asserted that if Title 34, § 73, is held to be unconstitutional, we are ". . . back to the common law . . ." and ". . . Montgomery [appellee] can't convey because the title is in her husband . . ."
To this latter assertion, we can only reply that Article X, Section 209, Constitution 1901, assures that all real and personal property of any female in this state, whether acquired before or after marriage, ". . shall be and remain the separate estate and property of such female . . ." As noted earlier, that provision was first placed in the Constitution of 1868 to insure that there would be no restoration of the common law rule. Obviously, the invalidation of a provision requiring the husband to join in a wife's conveyance could not have the effect of restoring the wife to her common law status. That, too, is precluded by the Constitution.
Nor are we persuaded that the legislature has the unbridled authority to govern all aspects of our social and economic life. That legislative discretion is limited by the Constitution to the enactment of laws which do not deny to persons of this state the equal protection of the laws. To hold that all conveyances of a wife's land, or any interest therein, must, to be valid, carry the signature of her husband, is to deny to a married woman rights which are freely exercised by every other adult person, male or female, in Alabama. To justify such a holding on the legal presumption that all married women are incapable of dealing with their own land, without the guidance of their husbands, is to ignore the realities of life as we know it.
We hold that Title 34, § 73, Code, limiting the freedom of a married woman to alienate or mortgage her lands, or any interest therein, without the assent and concurrence of her husband, violates the provisions of Article 1, Constitution of 1901, in that it denies to that category of adult landowners rights guaranteed to all other adult landowners by the Constitution and laws of this state. See In re Dorsey, 7 Port. 293, 361 (1838), holding that the Constitution of this state:
". . . means, and was intended to guarantee to each citizen, all the rights or privileges which any other citizen can enjoy or possess. . . . As this general equality is thus expressly asserted and guaranteed as one of the fundamental rights of each citizen, it would seem to be clear, that the power to destroy this equality must be expressly given, or arise by clear implication, or it can have no legal existence. . . ."
There is no provision of the Constitution which would permit the legislature to deny to married women rights possessed by all other adults. Its authority to do so must be found in that document, and cannot rest upon an ancient myth that married women are presumed to be more needful of protection of their own interests than other adults, male or female.
The judgment of the trial court is reversed and the cause remanded.
REVERSED AND REMANDED.
MADDOX, FAULKNER, JONES, EMBRY and BEATTY, JJ., and SIMMONS, Supernumerary Circuit Judge, sitting by designation of the Chief Justice, concur.
BLOODWORTH and ALMON, JJ., dissent.
ALMON, Justice (dissenting):
The court today in construing the State and Federal Constitutions has set a precedent which, if properly adhered to, will inevitably lead to the unconstitutionality of every law regulating marital property rights which treats husband and wife differently or treats the husband or wife differently from single persons.
After this decision, a wife may convey her separate property free of any marital encumbrance. On the other hand, the husband cannot convey his separate real property without encumbrance, unless the wife is willing to join the conveyance, because of the wife's potential dower interest in his estate.
*638 Applying the same standard, the wife's dower interest in her husband's estate must also be held unconstitutional and so on, in domino fashion, until every law enacted by our legislature which deals with marital property rights will be stricken as unconstitutional; e.g., alimony, the husband's duty to support the wife for necessaries, homestead exemption, etc.
The court has rendered its decision without addressing the issue of whether the husband and wife classifications are based on criteria reasonably related to a proper legislative objective. The Fourteenth Amendment does not prevent the treatment of different classes of persons in different ways. "The Equal Protection Clause of that amendment does, however, deny to States the Power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute." Reed v. Reed, 404 U.S. 71, 75-76, 92 S.Ct. 251, 253-254, 30 L.Ed.2d 225 (1971).
The United States Supreme Court has dealt with gender related classifications and the degree to which courts should defer to the decision of the legislature in a number of cases within the last few years. In Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), the issue was whether the Due Process Clause of the Fifth Amendment prevented requiring a married woman Air Force officer to show in fact that her spouse is dependent on her for over one-half of his support, for the purpose of obtaining increased quarters allowances and medical and dental benefits, while a male member of the Air Force is allowed to claim his spouse as a dependent without such a showing; i.e., without regard to whether the male's spouse is in fact a dependent. Mr. Justice Brennan wrote, for a plurality of the Court, that:
". . . [W]e can only conclude that classifications based upon sex, like classifications based upon race, alienage, or national origin, are inherently suspect, and must therefore be subjected to strict judicial scrutiny. Applying the analysis mandated by that stricter standard of review, it is clear that the statutory scheme now before us is constitutionally invalid." Id. at 688, 93 S.Ct. at 1771.
However, the plurality analysis of Justice Brennan has never received a majority vote.
In Geduldig v. Aiello, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), the issue was whether "the California disability insurance program invidiously discriminates against Jaramillo and other similarly situated by now paying insurance benefits for disability that accompanies normal pregnancy and childbirth." Id. at 492, 94 S.Ct. at 2490. Mr. Justice Stewart, writing for a majority of the Court, held that the Equal Protection Clause did not require the inclusion of normal pregnancies.
". . . Particularly with respect to social welfare programs, so long as the line drawn by the State is rationally supportable, the courts will not interpose their judgment as to the appropriate stopping point. `The Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all.'" Id. at 495, 94 S.Ct. 2491.
In Stanton v. Stanton, 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975), the Court held that a Utah statute establishing that minority for males extended to age twenty-one and for females to age eighteen was a violation of the Equal Protection Clause. In doing so, the Court declined to specify the appropriate standard of review.
"We find it unnecessary in this case to decide whether a classification based on sex is inherently suspect. . . ." Id. at 13, 95 S.Ct. at 1377.
"We . . . conclude that under any testcompelling state interest, or rational basis, or something in between§ 15-2-1 in the context of child support, does not survive an equal protection attack. In that context, no valid distinction between male and female may be drawn." Id. at 17, 95 S.Ct. at 1379.
*639 From a review of these and other United States Supreme Court cases, I conclude that the standard of review is "something in between." There is no need to strictly scrutinize the statute as if it dealt with a racial classification, but, on the other hand, to uphold the statute, the court would need to find a more compelling rationale than is needed to uphold an economic classification. See Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955).
To further understand what is an impermissible discrimination based on sex, I propose that the recent United States Supreme Court cases may be separated according to the purpose of the statute in question:
1. Statutes which discriminate for the purpose of developing a social welfare program may be upheld. See Geduldig v. Aiello, supra, where benefits for a normal pregnancy were excluded from a state disability insurance program.
2. Statutes which discriminate for the purpose of giving an economic preference to females over males may be upheld. See Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974), where widows, but not widowers, were given a $500.00 exemption from property taxation; and Schlesinger v. Ballard, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975), where female naval officers were accorded a thirteen year tenure of commissioned service before mandatory discharge for want of promotion, while male officers who were twice passed over for promotion but who might have less than thirteen years of commissioned service were mandatorily discharged.
3. Statutes which discriminate for the purpose of administrative convenience are probably unconstitutional. See Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) where a male seeking letters of administration was given a preference over a female; Frontiero v. Richardson, supra, where a male Air Force officer's wife was presumed to be a dependent while a female Air Force officer's husband was required to be a dependent in fact; and Weinberger v. Weisenfeld, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975) where a part of the Social Security Act provided benefits to a widow with minor children, but not to a widower with minor children.
4. Statutes which discriminate for the purpose of preserving "old notions" (Stanton v. Stanton, supra, 421 U.S. at 14, 95 S.Ct. at 1378) as to the relationship between men and women are probably unconstitutional.
My research has led me to no important cases upon the subject other than those discussed. Counsel for appellant apparently relies on the initial ire engendered in the minds of constitutional activists upon first glance at the statute in question.
However, the inquiry should go further. The legislature, a co-equal branch of government, has seen fit to enact a number of statutes dealing with the rights of husband and wife which must be considered as a statutory scheme. See Tit. 34, Marital Relations, Code of Alabama 1940, Recompiled 1958, Tit. 16, Descent and Distribution, and Tit. 7, Chapter 13, Exemption. It is not enough to dissect the part without considering the whole. It has long been the law in this jurisdiction that statutes are presumed constitutional and the burden of striking them down is upon those who assert their unconstitutionality.
Courts should, if possible, construe statutes as being constitutional so long as legislative intent is not thwarted or the constitution itself maligned. Whether this statutory scheme will ultimately withstand the United States Supreme Court's expanding view of due process and equal protection, I am not sure. I am sure, however, that the United States Supreme Court at this time has not seen fit to throw a constitutional roadblock in the way of states to fashion reasonable restrictions on married persons' property rights.
I perceive the object of this statutory scheme is to foster and preserve the family unit. Determining the wisdom of these enactments is not a judicial function if the object of the legislation is a legitimate state function. Indeed if one were to weigh the effect of statutes regarding husbands' and *640 wives' rights, it could be forcefully argued that the scales are tilted in favor of the wife. For example, dower (Tit. 34, § 40, Code 1940) and curtesy (Tit. 16, § 12, Code 1940) are not abstractly equal. The husband is not permitted to defeat the widow's dower right; whereas, the wife may by will defeat the widower's curtesy rights.
The observation of Mr. Justice Powell, the Chief Justice and Mr. Blackmun in their concurring opinion in Frontiero v. Richardson, supra, 411 U.S. at 692, 93 S.Ct. at 1773, is pertinent:
"There is another, and I find compelling, reason for deferring a general categorizing of sex classifications as invoking the strictest test of judicial scrutiny. The Equal Rights Amendment, which if adopted will resolve the substance of this precise question, has been approved by the Congress and submitted for ratification by the States. If this Amendment is duly adopted, it will represent the will of the people accomplished in the manner prescribed by the Constitution. By acting prematurely and unnecessarily, as I view it, the Court has assumed a decisional responsibility at the very time when state legislatures, functioning within the traditional democractic [sic] process, are debating the proposed Amendment. It seems to me that this reaching out to pre-empt by judicial action a major political decision which is currently in process of resolution does not reflect appropriate respect for duly prescribed legislative processes.
"There are times when this Court, under our system, cannot avoid a constitutional decision on issues which normally should be resolved by the elected representatives of the people. But democratic institutions are weakened, and confidence in the restraint of the Court is impaired, when we appear unnecessarily to decide sensitive issues of broad social and political importance at the very time they are under consideration within the prescribed constitutional processes."
I do not maintain that our law in every instance treat everyone equal. Neither do I personally agree with many of its provisions. I do think, however, that it is a proper legislative function to enact laws to promote and preserve the family unit.
Ultimately, some of these problems will have to be dealt with. My dissent, in the spirit of separation of powers, is a plea for judicial restraint.
BLOODWORTH, J., concurs.
NOTES
[1] Title 34, § 73: "Power of wife to alienate or mortgage her real property.The wife, if the husband be of sound mind, and has not abandoned her, or be not a nonresident of the state, or be not imprisoned under a conviction for crime for a period of two years or more, cannot alienate or mortgage her lands, or any interest therein, without the assent and concurrence of the husband, the assent and concurrence of the husband to be manifested by his joining in the alienation in the mode prescribed by law for the execution of conveyances of land. But if the husband be non compos mentis, or has abandoned the wife, or is a nonresident of the state, or is imprisoned under a conviction for crime for a period of two years or more, the wife may alienate or mortgage her lands as if she were sole. Provided, however, that the wife may lease her lands and tenements or any interest therein without the assent and concurrence of the husband."
[2] For a full treatment of problems involved in such legislation in Alabama, see Knowles, The Legal Status of Women in Alabama: A Crazy Quilt, 29 Ala.L.Rev. ___ (1977).
[3] "`[W]hile the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is "so unjustifiable as to be violative of due process."' Schneider v. Rusk, 377 U.S. 163, 168, 84 S.Ct. 1187, 1190, 12 L.Ed.2d 218 (1964); see Shapiro v. Thompson, 394 U.S. 618, 641-642, 89 S.Ct. 1322, 1335, 22 L.Ed.2d 600 (1969); Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954)." (411 U.S., n.5, at 680, 93 S.Ct. at 1767).
[4] Footnote 17 in Taylor, supra, reads as follows: "In Hoyt v. Florida, supra [368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961)], the Court placed some emphasis on the notion, advanced by the State there and by Louisiana here in support of the rationality of its statutory scheme, that `woman is still regarded as the center of home and family life.' 368 U.S., at 62, 82 S.Ct. [159] at 162. Statistics compiled by the Department of Labor indicate that in October 1974, 54.2% of all women between 18 and 64 years of age were in the labor force. United States Dept. of Labor, Women in the Labor Force (Oct. 1974). Additionally, in March 1974, 45.7% of women with children under the age of 18 were in the labor force; with respect to families containing children between the ages of six and 17, 67.3% of mothers who were widowed, divorced, or separated were in the work force, while 51.2% of the mothers whose husbands were present in the household were in the work force. Even in family units in which the husband was present and which contained a child under three years old, 31% of the mothers were in the work force. United States Dept. of Labor, Marital and Family Characteristics of the Labor Force, Table F (March 1974). While these statistics speak more to the evolving nature of the structure of the family unit in American society than to the nature of the role played by women who happen to be members of a family unit, they certainly put to rest the suggestion that all women should be exempt from jury service based solely on their sex and the presumed role in the home." (419 U.S. at 535, 95 S.Ct. at 700).