351 So.2d 906 (1977)
In re William Herbert ORR
v.
Lillian M. ORR.
Ex parte William Herbert Orr.
SC 2536.
Supreme Court of Alabama.
November 10, 1977.
PER CURIAM.
PETITION FOR WRIT OF CERTIORARI QUASHED AS IMPROVIDENTLY GRANTED.
MADDOX, FAULKNER, SHORES, EMBRY and BEATTY, JJ., concur.
ALMON, J., concurs specially, with whom BLOODWORTH, J., joins.
JONES, J., dissents.
TORBERT, C. J., recuses.
ALMON, Justice (concurring specially):
I concur in affirming the Court of Civil Appeals, 351 So.2d 904, and continue to adhere to the views expressed in my dissent in Peddy v. Montgomery, 345 So.2d 631, 637 (Ala., 1977).
I dissented from the Court's opinion in Peddy because I felt it established a precedent which would lead to striking down every state statute making a gender related classification. At the forefront of my fears were challenges to the laws concerning marital rights; such as, homestead, dower, and alimony. These laws are designed to foster and preserve the family unit, a constitutionally permissible area for legislation.
The breadth of the pen with which the Court wrote Peddy has now come back to confront us. It appears that when viewed in isolation, statutes which restrict the rights of women are unconstitutional. On the other hand, statutes which grant to women rights which men do not possess are not unconstitutional.
BLOODWORTH, J., concurs.
JONES, Justice (dissenting):
I respectfully dissent.
This case, before the Court upon writ of certiorari, concerns the constitutionality of Alabama's alimony statutes. See Tit. 34, §§ 31-33, Code. William Herbert Orr, Petitioner, contends that these statutes are unconstitutional in that they violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution because a wife may obtain alimony, whereas a husband, under similar circumstances, may not. The Petitioner also asserts that these statutes violate the Due Process Clause of the Fifth Amendment. Because this argument is so interwoven into the fabric of the equal protection contentions, the two will be dealt with together. Based upon Murphy v. Murphy, 232 Ga. 352, 206 S.E.2d 458 (1974), cert. den. 421 U.S. 929, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975), the trial Court and Court of Civil Appeals held our statute constitutionally acceptable. I would reverse.
The facts of this case are not in dispute. On February 27, 1974, Mr. Orr and Lillian M. Orr, Respondent, signed a written stipulation wherein Mr. Orr agreed to pay Mrs. *907 Orr the sum of $1,240 per month for her support and maintenance. On that same date, a final decree of divorce, incorporating the above agreement, was granted.
On July 28, 1976, Mrs. Orr alleged that Mr. Orr was $2,848 in arrears in his alimony payments. Mr. Orr filed a motion alleging that Mrs. Orr's petition was based upon an illegal decree in that it relied upon Tit. 34, §§ 31-33, Code, and that these sections are unconstitutional. The trial Court denied the motion and granted judgment against Mr. Orr for the arrearages, attorney's fees, and court costs.
Here, we have a needy wife who qualifies for alimony and a husband who has the property and earnings from which alimony can be paid. The veracity of this statement has not been contested. The husband, however, complains that the statutes are unconstitutional because they place an obligation upon male spouses which is not reciprocally impressed upon female spouses. The husband who must pay this alimony has sufficient standing to raise the constitutional questions involved. See Stern v. Stern, 165 Conn. 190, 332 A.2d 78 (1973).
Tit. 34, § 31, Code of Alabama, provides:
If the wife has no separate estate, or if it be insufficient for her maintenance, the judge, upon granting a divorce at his discretion may decree to the wife an allowance out of the estate of the husband, taking into consideration the value thereof and the condition of his family. (Emphasis added.)
This Court has held that the statutory scheme is to provide alimony only in favor of the wife. Davis v. Davis, 279 Ala. 643, 189 So.2d 158 (1966). It is this inequality of treatment which the Petitioner alleges is unconstitutional.
Two standards are utilized to determine whether a statute will withstand examination under the Equal Protection Clause of the United States Constitution. The strict scrutiny standard is a test reserved for cases involving laws which operate to the disadvantage of suspect classifications or that interfere with the exercise of fundamental rights and liberties explicitly or implicitly protected by the Constitution. San Antonio School District v. Rodriquez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Under the second, and traditional, equal protection analysis, a legislative classification must be sustained unless it is patently arbitrary and bears no reasonable, rational relationship to a proper governmental interest. Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); and Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971).
"General equality" is one of the fundamental rights guaranteed each citizen. Peddy v. Montgomery, 345 So.2d 631 (Ala.1977); and In re Dorsey, 7 Port. 293 (Ala.1838). This, however, does not mean that all types of equal protection classifications are to be examined under the strict scrutiny test. Likewise, it does not mean that natural, rational classifications must be treated identically. Instead, they must be treated with "general equality."
Sex, itself, has been held to be a "suspect" classification by only a plurality of the Supreme Court. Frontiero, supra. As a plurality decision, it is enlightening, but not controlling. Husband M v. Wife M, 321 A.2d 115 (Del.1974). Moreover, as pointed out by the dissent in Frontiero, it is inappropriate to hold sex suspect while the Equal Rights Amendment, which would render the decision moot, is still pending. Frontiero, 411 U.S. at 691, 93 S.Ct. 1764 (Powell, J., concurring). I see no reason to hold sex suspect in this case because the discrimination evident upon the face of the statutes fails even under the lesser "rational relationship" test.
Separating persons into various classifications does not, per se, violate the Equal Protection Clause. It is only invidious discrimination which offends the Constitution. Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); and Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).
"[T]he Fourteenth Amendment does not deny to States the power to treat different *908 classes of persons in different ways. [Citations omitted.] . . . The Equal Protection of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification `must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920)." Reed v. Reed, 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971).
When the above-stated formula is applied to the classification contained in our alimony statutes, in my opinion, these statutes must be deemed unconstitutional.
The initial inquiry concerns whether these statutes are "arbitrary." The basis of our alimony statutes lies in the common law obligation of a husband to support his wife. Sims v. Sims, 253 Ala. 307, 45 So.2d 25 (1950); 27A C.J.S. Divorce § 228; and 15 A.L.R.2d 1246 (1951). While this discrimination may have some historical legal justification, the advent of the married woman's property acts dissolve any present justification. The wife is no longer the chattel of her spouse. She is a coequal partner, with equal duties, rights and obligations. Therefore, any discrimination as to who may receive alimony, merely because of sex, in my opinion, must be viewed as arbitrary.
Even should we hold that the classification by sex is not arbitrary, it must bear a rational relation to some legitimate governmental purpose. Rationality, as used here, however, does not mean that some vague, sentimental, paternalistic, or chivalric reason for the rule exists; it means that there is a truly rational relationship between the means used and the purpose sought to be served. See Thaler v. Thaler, 89 Misc.2d 315, 391 N.Y.S.2d 331 (1977). Because, as stated, the basis of the statute rests upon the assumption that wives may depend upon their husbands for support, but husbands never so depend upon their wives, the statute must fail because such a distinction has no rational basis in reality.
Mrs. Orr asks this Court to follow the example of the Georgia Supreme Court in Murphy v. Murphy, supra. In that case, the Georgia alimony statute (similar to our own in that only women can receive alimony) was held constitutional. To a large extent, the case was based upon the Supreme Court case of Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974). While dealing with a tax exemption for widows only, Kahn held that a rational relation to a legitimate interest existed because of the undisputed financial difficulties confronting the lone woman in today's society.
I cannot accept the reasoning of the Georgia Court in Murphy and Shepherd v. Shepherd, 233 Ga. 228, 210 S.E.2d 731 (1974) (reaffirming Murphy). The Kahn decision was based upon a state taxing statute. It is well recognized that such statutes are given great constitutional leeway. See Kahn, 416 U.S. at 355, 94 S.Ct. 1734; Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973); and Ginsburg, Gender and the Constitution, 44 Cincinnati L.Rev. 1, 13 (1975). Furthermore, the reasoning of Justice Douglas is circuitous in that, given the historic economic inequality between the sexes which he cites, a holding of this type merely perpetuates these practices because of its "protective" posture. Moreover, Kahn was decided prior to Weinberger v. Wiesenfeld, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975), which evinces a shift in the Court's approach to sex-discrimination cases.
In Weinberger, the Supreme Court held that it was unconstitutional to allow a widow certain social security benefits not granted a widower. While recognizing that men are more likely than women to be the primary family "breadwinner," the Court found no rational basis for the statutory distinction between men and women. 420 U.S. at 645, 95 S.Ct. 1225. Numerical probabilities evince no rational reason for the absolute exclusion of male spouses from the *909 statute. Especially is this true where, as in the case before us, the trial Court has discretion as to whether to grant alimony at all. Thaler v. Thaler, 391 N.Y.S.2d at 336.
Even assuming arguendo this Court found the Alabama alimony statutes to be nonarbitrary and to have a rational relationship to the object of the legislation, I would hold the statutes unconstitutional because the object of the legislation is, itself, improper. See Darrin v. Gould, 85 Wash.2d 859, 540 P.2d 882 (1975). Regardless of the presence of a rational relation, the statute must have some legitimate, constitutional interest as its objective.
The objective of the legislature, in passing these statutes, was to protect the lone female from the uncompromising realities of the business world. The presumed justification for this objective is that in the great bulk of divorces it is the woman who is economically disadvantaged. This, however, does not lead to a permissible conclusion that males may be denied alimony in situations where females are granted it. Given the legal inhibition against sexual discrimination, the fact that statistically a wife is much more likely to be an alimony recipient cannot mean, as a matter of law, that a husband should be excluded altogether from access to alimony.
"There can be no doubt that our Nation has had a long and unfortunate history of sex discrimination. Traditionally, such discrimination was rationalized by an attitude of `romantic paternalism' which, in practical effect, put women, not on a pedestal, but in a cage." Frontiero, 411 U.S. at 684, 93 S.Ct. at 1769.
Such "protective," paternalistic legislation as we have before us should not be allowed continued effectiveness. Philosophically, a benevolent grant to women of legal rights unreasonably denied to men may help women immediately affected. This type statute, however, has the continuing effect of implicit condescension and perpetuates the misguided conception that women are not legally equal to men. Thaler, 391 N.Y.S.2d at 333. See Peddy v. Montgomery, supra; and Ginsburg, at 3, 6. Moreover, in Weinberger, the Supreme Court indicated it would no longer "accept at face value, as an automatic shield for discrimination, recitation of woman-protective purposes for laws [which effectively] associate women with the hearth and men with the wide world outside the home." Ginsburg, at 41. The discrimination explicit in Tit. 34, §§ 31-33, Code, should not be tolerated. The right of support depends not upon sex, but upon need.
Several Courts have read their alimony statutes so as to include males. See Whitt v. Vauthier, 316 So.2d 202 (La.App.1975); and Thaler, supra. I cannot accept this reasoning, however. This Court has previously determined that our statute provides no alimony for male spouses. Davis v. Davis, supra. Furthermore, because there was no alimony at common law, our statute must be strictly construed. The power to award alimony is jealously limited to statutory authority. Gabbert v. Gabbert, 217 Ala. 599, 117 So. 214 (1928); and 27A C.J.S. Divorce § 203. For this reason, I would hold the alimony statutes unconstitutional but I would not rewrite them so as to include the male spouse. We must look to the legislature to pass a more appropriate statute.
Moreover, as in Peddy, supra, "we are not called upon to decide whether all legislation which contains a so-called `gender-based classification' violates the constitution, either of this state or of the United States." 345 So.2d, at 635.
I conclude with one additional observation: Nothing I have said in this dissenting opinion should be construed as an accusation of inconsistency on the part of the majority in the instant case with the holding of the majority in Peddy. Indeed, I believe even a casual reading of this dissent will disclose that I have cited Peddy for an incidental point merely, and not as precedent for my views. I acknowledge that Peddy's rationale is not sex based; that the statute there declared unconstitutional was obligatorydeclaring the conveyance void for failure of the husband to join in its execution; and that the statute here under *910 attack leaves the grant of alimony discretionary with the trial court upon its finding of need on the part of the wife, ability to pay on the part of the husband, etc. While this difference does not require, in my opinion, different results, neither does it compel reversal in this case. I say this simply to make clear that my views herein expressed represent an extension of Peddy's rationale; and, therefore, I do not assert, as do my fellow Justices Bloodworth and Almon, inconsistency on the part of the majority.
For the reasons stated above, I would grant the writ and hold that the Court of Civil Appeals is due to be reversed.