This is the second time this case has been before us. Peddyv. Montgomery, 345 So.2d 631 (Ala. 1977). On remand, Peddy filed a motion for summary judgment based upon the pleadings, depositions and affidavits previously submitted and this court's opinion in Peddy v. Montgomery, supra. The trial court granted his motion and Montgomery appealed.
The following is not disputed:
In early February, 1972, Alice Wyllie told Peddy that Montgomery had some property for sale. Peddy examined the property with Wyllie and asked her to find out how much Montgomery wanted for it. After some discussion, Montgomery told Wyllie that she would sell the property to Peddy for $39,000, 29% of which would be paid on closing and the balance due in five equal annual installments plus 6%. Wyllie relayed this information to Peddy, who wrote his check in the amount of $11,310 (29% of the purchase price) payable to Wyllie and Montgomery.
On February 18, 1972, Montgomery executed an instrument prepared, at her request, by her attorney, which was a printed form captioned "Earnest Money Receipt." The entire instrument is as follows:
"Earnest Money Receipt
"Fairhope, Alabama, February 18, 1972
"RECEIVED OF A.N. Peddy
"hereinafter mentioned as the Purchaser, the sum of ELEVENTHOUSAND THREE HUNDRED TEN NO/100 ($11,310.00) Dollars as earnest money and in part payment for the purchase of the following described real estate situated in Fairhope.
 "County of Baldwin
"State of Alabama
"and more particularly described as follows, to-wit: Allproperty of the Seller located on the Northwest corner ofMorphy Avenue and Grenno Road, Fairhope, Alabama which we have this day sold to the Purchaser for the sum of THIRTY-NINETHOUSAND AND NO/100 ... ($39,000.00) ........ Dollars on the following terms, to-wit: The sum of ELEVEN THOUSAND THREEHUNDRED TEN NO/100 ($11,310.00) Dollars as hereinabove receipted for and ($ ____ Dollars upon acceptance of title and delivery of __________________, balance of TWENTY-SEVENTHOUSAND SIX HUNDRED NINETY AND NO/100 ($27,690.00) DOLLARS tobe payable in five (5) equal annual installments of FIVETHOUSAND FIVE HUNDRED THIRTY-EIGHT ($5,538.00) DOLLARS plusinterest at the rate of SIX (6%) PER CENT per annum on theunpaid balance.
"At the option of the seller, xxxxxxxxxxxxxxxxxx Title Insurance Policy from a reliable Abstract Company showing good and marketable title is to be furnished the Purchaser forthwith.
"It is agreed that if the owner does not approve the above sale, or if the title to the said premises is not marketable, or cannot be made so within thirty days after notice containing written statement of defects is delivered to owner, the earnest money herein receipted for shall be refunded. But if the above sale is approved by the owner and the title to the said premises is marketable, and the purchaser neglects or refuses to comply with any of the conditions of this sale, and to make payments promptly, as hereinabove set forth, then the earnest money herein receipted for shall be forfeited to the undersigned agent to the extent of the agreed upon commission, and the residue in the owner as liquidated damages, and this contract shall thereupon be of no further binding effect.
"The property is to be conveyed by sufficient warranty deed and be free and clear of all liens and incumbrances to date xxxxxxxxxxxxxxxxxxxxxxxxx
Earnest money to be held by Alice Wyllie and Bessie Montgomeryuntil final closing. "The taxes for ___________________________ and rents, interest and premiums for existing insurance shall be adjusted pro rata between the seller and the purchaser on the calendar year basis, as of the date of the consummation of the sale herein, or of delivery of possession, whichever first happens.
"Time is the essence of this contract. ____________________ ______________________________________________________ Agent.
"I hereby agree to purchase the above property and to pay the price of __________ ($ _________) Dollars as specified above.
 "Purchaser __________________________ "Address ______________ Phone _______ ___________________________, 19__
"I hereby approve and accept the sale of the above described property and the price and conditions as set forth in above contract and agree to furnish Abstract or Title Insurance Policy continued to date, showing good and marketable title, also the said Warranty Deed, when stated, and agree to pay forthwith to the above named agent a commission amounting to $ _______ for services rendered and to be rendered in this transaction.
 "Owner /s/ Bessie K. Montgomery
"Address ______________ Phone ______" *Page 700 
Thereafter, Montgomery's attorney advised Wyllie that there was a cloud on the title; and it could be anywhere from ninety days to a year before it was cleared. Montgomery told her attorney to file a suit to quiet title. Wyllie suggested to Montgomery that they should put the $11,310 in an interest bearing account until the title was cleared. They both endorsed the check and bought a certificate of deposit in Peddy's name. Montgomery said in deposition that the agreement at that time was to go ahead with the transaction as soon as the title was cleared. Wyllie advised Peddy by letter in March, 1972, that there was a problem with the title and also advised him that the down payment had been put in the bank. The bank wrote Peddy saying:
 "Alice Wyllie informs us that it will be approximately four to six months before your real estate transaction with Bessie Montgomery can be closed out.
 "We have suggested to Alice that you should put this money in a ninety day savings certificate so that you can draw interest each quarter at 5%. In order that the certificate can be cashed at the time the real estate transaction is ready to close, we have prepared a signature card for you and Alice to sign. This means that Alice can cash this certificate in order to pay the proceeds to Bessie Montgomery.
". . . ."
Title to the property was finally cleared in November, 1973. In that month, Peddy called upon Montgomery to close the transaction. She refused to do so; and, in deposition, said: "I told him I had changed my mind." She also admitted, in deposition, that she had agreed to sell the property to him in February, 1972, and that the agreement was to hold the earnest money in the bank until the title was cleared. Her testimony was that she had changed her mind during the time the title was being cleared. Peddy said, in deposition, that she told him that she had been advised that she would be foolish to sell the property at the price they had agreed upon.
On appeal, Montgomery argues that the trial court erred in granting Peddy's motion for summary judgment because a genuine issue of fact exists as to whether there was a contract between these parties for the sale of the land involved. We disagree. The undisputed facts show that there was a contract for the sale of the lands described. Although, perhaps inartfully drawn, the instrument prepared by Montgomery's attorney and executed by her, and Peddy's check in the amount referred to in that instrument, taken together, clearly show that these parties reached an agreement. It is not necessary, under our cases, that the agreement be in any particular form provided the substance of the agreement is stated. In Alba v. Strong,94 Ala. 163, 165, 10 So. 242, 242-243 (1891), this court made the following observations:
 "The following propositions must be regarded as settled by the former decisions of this court beyond controversy: First, that to authorize the specific enforcement of an agreement to sell land, all the terms of the agreement must have been agreed on, leaving nothing for negotiation. Second, that all the terms of the agreement viz., the names of the parties, the subject-matter of the contract, the consideration and the promise, must be in writing . . . Third, that it is not essential that the paper evidence of the agreement be in any particular form, provided it contain the substance, as stated above. Fourth, that the written evidence of the terms of the agreement need not all be expressed in one paper. . . ."
This court has frequently held that specific performance may be ordered where the contract is just, fair and reasonable, and reasonably certain in respect to the subject matter, terms and founded on a valuable consideration. Alabama Central RailroadCo. v. Long, 158 Ala. 301, 48 So. 363 (1909); Carlisle v.Carlisle, 77 Ala. 339 (1884); Moon's Adm'r v. Crowder, 72 Ala. 79
(1882).
When tested by the criteria set out in prior cases, we cannot find that the trial court abused its discretion in ordering specific performance in this case. *Page 701 
The judgment appealed from is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.