The Court was called upon to reconsider the prior holding inJones v. Jones, 355 So.2d 354 (Ala. 1978), and to determine that the wrongful death statute, conferring a conditional right upon the mother to bring the action, yet conferring an absolute right upon the father, violates the equal protection clauses of the United States and Alabama Constitutions because it creates arbitrary and capricious gender based classifications. It is after careful reflection and deliberation, that I would hold that the gender based classifications created in §§ 6-5-391 and6-5-390 are unconstitutional because they deny equal protection of the law without any substantial relationship to the intendment of the wrongful death statute.
The threshold determination to this conclusion is which of the three equal protection tests espoused by the United States Supreme Court applies to this action. I recognize that the traditional rational basis test is typically invoked when the statute under review relates to socioeconomic legislation.McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393
(1961); Railway Express Agency, Inc. v. New York, 336 U.S. 106,69 S.Ct. 463, 93 L.Ed. 533 (1949). Under this test the regulation must meet minimal judicial scrutiny so that the classification is rationally and reasonably related to the purpose for which the statute was created.
From the skeleton of this test, two other tests have been carved out. The compelling state interest test, when the statute is strictly construed, is applicable when fundamental rights have been encroached upon, Shapiro v. Thompson,394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and when suspect classifications have been created. Only three classes have been declared to be suspect, those with reference to race, alienage, and religion. Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817,18 L.Ed.2d 1010 (1967) (race); Examining Board of Engineers,Architects and Surveyors v. Flores De Otero, *Page 534 426 U.S. 572, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976); Yick Wo v.Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) (alienage); Hunter v. Erickson, 393 U.S. 385, 89 S.Ct. 557,21 L.Ed.2d 616 (1969) (religion). It is well implanted within the minds of jurists that, to date, gender based classifications have been given the elevated status of a suspect classification by only a plurality of the Supreme Court. Frontiero v.Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). Therefore, it is understood that generally the compelling state interest test is not employed in these instances.
The third, nascent, test — the substantial relationship test — has received widespread acceptance for use in the area of gender based classifications. Craig v. Boren, 429 U.S. 190,97 S.Ct. 451, 50 L.Ed.2d 397 (1976). Under this test the classifications must be greater than rationally related to the purpose for which the statute was created; these classifications must be substantially related to the furtherance of the legislative objective. The judicial review must be more than minimal and less than strict. Craig. I am not yet ready to hold that sex is a suspect classification, nor do I feel comfortable giving minimal scrutiny to gender based classifications. Therefore, with deference to precedents established, I will apply the substantial relationship test to the statutory classifications codified in our wrongful death statute of a minor.
Having made the threshold determination to employ the substantial relationship test, I now turn to the purpose of the wrongful death statute and ascertain whether the gender based standing to sue classifications advance that objective. Sections 6-5-391 and 6-5-390, respectively, create distinct and separate causes of action. McNamara v. Logan, 100 Ala. 187,14 So. 175 (1893). Section 391 deals with a cause of action only for the wrongful death of a minor; the latter section deals only with a cause of action for the injury of a minor. These two sections do enmesh, however, only regarding the contingencies delineated in § 390 as to when the mother is given the right to bring the cause of action under either section.
The types of damages recoverable under each section are different. Section 390 provides for the recovery of loss of the child's labor, medical expenses, and the value of the parent's services in caring for the child when the parent loses time from work. Smith v. Richardson, 277 Ala. 389, 171 So.2d 96
(1965). Punitive damages are not recoverable for the injury of a minor, Smith.
By contrast, our wrongful death statute is solely penal in nature and compensatory damages are not recoverable. Eich v.Town of Gulf Shores, 293 Ala. 95, 300 So.2d 354 (1974). Nettlesv. Bishop, 289 Ala. 100, 266 So.2d 260 (1972). The stated purpose of our wrongful death statute is to punish wrongful conduct and to deter future similar conduct, Nettles, and the amount recovered is not dependent upon the amount of the loss sustained by the victim's survivors. The jury's assessment of the damages is measured by the enormity of the wrong, Crenshawv. Alabama Freight, Inc., 287 Ala. 372, 252 So.2d 33 (1971), and the culpability of the wrongdoer. Louisville N.R.R. v.Cross, 205 Ala. 626, 88 So. 908 (1921).
Therefore, I disagree with the majority's reaffirming the language in Jones, where the Court stated:
 The object of § 118 [now § 6-5-390] is to provide a right of action for the parent's damages for loss of services, expense of treatment, etc. for the child's injury. Section 119, [now § 6-5-391] by the same token, allows a right of action in cases of wrongful death. (emphasis supplied).
It is not "by the same token" that the "object" of the wrongful death statute is to provide compensation for loss as is the design of the injury statute. Similarly, it is not by the same token that the injury statute is punitive in nature as is the wrongful death statute. Notwithstanding the overlap in these two sections regarding the mother's contingent right to bring the action, these two sections were not enacted to further the same purpose.
From the premise that the purpose of the wrongful death statute is penal in nature, I next address the issue of whether the priority *Page 535 
classifications, incorporated by reference in the wrongful death statute from the injury statute, are substantially related to the attainment of this penal object. It is asserted by Cummings that the classifications are substantially related to the object of the statute because it is the father who is primarily liable for the support and maintenance of his minor children; therefore, it is the father who should be granted this superior standing to sue for the wrongful death of his children. Cummings relies upon the Court's language reprinted in Jones, from Thorne:
 The classification imposed by § 118 [now § 6-5-390] is not arbitrary, because the legislature has recognized that, between the two parents, the father has the primary and continuous duty to support and maintain his minor children reasonably according to his means. Thomason v. Thomason, 53 Ala. App. 206, 298 So.2d 627 (1974); Brock v. Brock, 281 Ala. 525, 205 So.2d 903 (1967); Stovall v. Johnson, 17 Ala. 14
(1849). This continuing obligation gives the father the priority in receiving any damages because of the injury or death of the child. (emphasis supplied).
I disagree with the contention that this duty to support is justification for bestowing upon the father a superior right to bring the wrongful death action. There is no substantial relationship between the penal wrongful death statute and the bestowment upon the father of a superior standing to initiate, and recover from, the lawsuit. Perhaps there is a substantial nexus between the priority classifications in § 390 and the compensatory object of the injury statute; but, I cannot find any reason for using sex as a basis for a primary right to commence a wrongful death action when the object of the cause of action is to deter and punish rather than to compensate.
Cummings argues that Mrs. Mattingly does not have standing to raise the constitutional issues or to intervene because she failed to allege in her motion to intervene that she had custody of the child at the time of his death. Her motion is sufficient "to affirmatively show the requisite interest in the pending litigation and facts establishing [her] right to [intervene]." Kennesaw Life Accident Insurance Co. v. OldNational Insurance Company, 291 Ala. 752, 287 So.2d 869 (1974). In her motion she alleges that "she is the mother of Dwaine Louis Cummings, deceased," and that "[a]pproximately fourteen (14) years ago movant and plaintiff were divorced by a decree entered by a Court in the State of California by which decree movant was awarded the care, custody and control of Dwaine Louis Cummings. . . ."
Section 390 does not prescribe that either parent must allege custody as a prerequisite to bring the action. The statute simply sets forth those cases where the father or mother shall bring the action without regard to the parent who has legal custody of the child at the time of death. In fact, the custody issue lends support to my opinion that the statute is unconstitutional; there is no nexus between a penal statute and statutory classifications that permit the father the primary right to initiate the action without regard to whether the father has legal custody of the child.
Cummings' contention that Mrs. Mattingly has no standing to sue because she failed to allege loss of services is likewise unmeritorious because these damages play no part in a claim for wrongful death. Therefore, Mrs. Mattingly is not precluded from raising the constitutional issues on appeal for want of alleging in her motion (1) custody of her child at the time of his death; or (2) loss of the child's services.
Within the past several years, this Court has had the occasion to find some of the gender based statutes unconstitutional when challenged on equal protection grounds. In Peddy v. Montgomery, 345 So.2d 631 (Ala. 1977), this Court held that the statute,
 limiting the freedom of a married woman to alienate or mortgage her lands, or any interest therein, without the assent and concurrence of her husband, violates the provisions of Article 1, Constitution of 1901, in that it denies to that category of adult landowners rights guaranteed to all *Page 536 
other adult landowners by the Constitution and laws of this state.
In Parker v. Hall, 362 So.2d 875 (Ala. 1978), this Court held that the statute "which provides that a woman's marriage revokes her Will, is unconstitutional in that it denies equal protection of the law."
Justice Jones, dissenting in Orr v. Orr, 351 So.2d 906 (Ala. 1977), opined that "any discrimination as to who may receive alimony, merely because of sex, in my opinion, must be viewed as arbitrary." In Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102,59 L.Ed.2d 306 (1979), the Supreme Court held the alimony statute unconstitutional because it provided that only men, and not women, shall pay alimony. In that case it was noted that the "old notions" that it is the man's primary responsibility to enter into the marketplace to provide for the essentials of the home while it is the woman's place solely to stay in the home are no longer reasons for gender based statutes. Indeed, a statute which has as its foundation the outmoded precept that the man is the head of the family in all instances "is to ignore the realities of life as we know it." Peddy, supra, at 637.
I do not, in this case, enlist any views on the constitutionality of new § 390, nor do I intimate any expansion of the holding in Orr or express an opinion on the familial roles of men and women. My opinion in the instant case is that Code 1975, § 6-5-391, with its reference to the contingent right to sue in § 390, is unconstitutional only insofar as it grants the father an unconditional superior right to bring a cause of action for the wrongful death of his child, while it grants to the mother a conditional subordinant right to commence the lawsuit. I opine that the gender based classifications do not substantially relate to the penal object of the wrongful death statute.
I would reverse and remand.
JONES and EMBRY, JJ., concur.